UNITED STATES of America, Plaintiff-Appellee,

v.

Lewis T. PERRY, Defendant-Appellant.

No. 83–8695.

United States Court of Appeals, Eleventh Circuit.

Aug. 29, 1984.

John C. Swearingen, Jr., Ben B. Philips, Columbus, Ga., for defendant-appellant.

Sam Wilson, Jr., Asst. U.S. Atty., Macon, Ga., for plaintiff-appellee.

Before FAY, KRAVITCH and HATCH-ETT, Circuit Judges.

KRAVITCH, Circuit Judge:

In this appeal, Lewis T. Perry challenges his convictions under 21 U.S.C. § 841(a)(1) for distributing cocaine and for possessing cocaine with intent to distribute. For the reasons that follow, we affirm in part, reverse in part and remand.

## I. BACKGROUND

In May 1983, Robert Hinton, Sr. and Robert Hinton, Jr., father and son, pleaded guilty to federal conspiracy charges arising from a large cocaine operation in Kentucky. Each was sentenced to a six-year prison term. After sentencing, but before service of the sentences had commenced, the Hintons agreed to work with narcotics officers in hopes of obtaining sentence reductions. Having been previously acquainted with Perry, the two traveled to Columbus, Georgia, and met with an agent of the Drug Enforcement Administration and members of the Muscogee County Sheriff's Department. Evidence adduced by the Government at trial indicates that Perry and the Hintons were subsequently involved in three drug transactions.

The Hintons first dealt with Perry on June 23, 1983. Using money furnished by the Sheriff's Department, they purchased one ounce of cocaine from him for $1,550.

On June 30, 1983, the Hintons met with Gerald Chapman, an undercover DEA agent posing as a band manager named Jerry Carter. That evening, the three of them rendezvoused with Perry at the Municipal Auditorium in Columbus, ostensibly to discuss the sale of recording equipment. While there, Hinton, Sr. took Perry aside and exchanged $3,100, the price of two ounces, for a three-ounce package of cocaine. Then Hinton, Sr. took Chapman aside and handed over the package. When they returned, Chapman asked that Perry separate one ounce, but Perry refused to deal with Chapman openly. Instead, after

taking Hinton, Sr. aside, Perry insisted that Hinton, Sr. get the remaining $1,550 from Chapman and bring it back to Perry. Hinton, Sr. did so, and they parted.

The third transaction occurred on August 16, 1983. Hinton, Jr. telephoned Perry in the morning and arranged to buy a pound of cocaine for $25,000. Around 6:30 p.m., the Hintons met Perry at the karate and dance studio which he managed and were told to call at his house in 45 minutes. Hinton, Jr. went to Perry's house as instructed, and Perry showed him a package of cocaine wrapped in a towel. Hinton, Jr. then informed Perry that they had only $20,000 and suggested that Perry take three ounces out of the pound. Agreeing, Perry told him to return to the studio in half an hour. Perry met the Hintons at the studio around 8:30 p.m., let them in, and told them that the cocaine would be coming. Shortly thereafter, Perry's codefendant, John Battle, arrived. Perry retrieved a brown paper bag from Battle's car and gave it to Hinton, Sr., who confirmed that it contained cocaine. Hinton, Jr. then went to get the money from the trunk of the Hintons' car, thereby signaling the authorities to move in. As agents approached, Perry tossed the cocaine through a hole in the ceiling into the rafters. The agents entered the studio, arrested Perry and Hinton, Sr., and seized the cocaine; Battle and Hinton, Jr. were arrested outside.

In an indictment returned on August 19, Perry was charged with three counts of violating 21 U.S.C. § 841(a)(1), each count corresponding with one of the three incidents recounted above. Count I alleged the distribution of cocaine on June 23; Count II alleged the distribution of cocaine to Chapman on August 30; and Count III, which also named Battle, alleged the possession of cocaine with intent to distribute on August 16.

Perry moved to suppress the evidence seized at the studio on August 16, *i.e.*, the thirteen-ounce bag of cocaine. At the pretrial hearing held on September 1, Perry presented the testimony of two witnesses, his mother and the karate instructor at the studio. The district court ruled from the bench that Perry had failed to establish standing and therefore denied the motion to suppress.

In the course of a three-day jury trial, Hinton, Jr. testified to his status as a government informant. On cross-examination, defense counsel inquired about his prior cocaine conspiracy conviction. Having elicited that there had been 29 other defendants in that case, counsel asked about the quantity of cocaine involved. The Government objected on relevancy grounds, and the district court ultimately sustained the objection.

As the jury was unable to reach a verdict on Count I, a mistrial was declared as to that count. Perry was found guilty on Counts II and III, and was later sentenced to two concurrent five-year prison terms followed by a five-year special parole term. Battle was also found guilty, and was given a two-year suspended sentence and three years' probation.

## II. VARIANCE BETWEEN ALLEGATION IN INDICTMENT AND PROOF AT TRIAL

■ Count II of the indictment alleges that Perry "knowingly and intentionally did unlawfully distribute to Gerald Chapman approximately three ounces of cocaine ....'' Perry contends that he was entitled to a judgment of acquittal inasmuch as the evidence adduced at trial tends to show that on June 30, Perry distributed cocaine to Hinton, Sr., not Chapman. We disagree for two reasons. First, there is no variance between the allegation in question and the proof at trial. To be sure, the testimony of the Government's witnesses establishes that Perry never openly discussed the sale of cocaine with Chapman, that Perry did not give the cocaine directly to Chapman, and that Perry did not receive the last $1,550 directly from Chapman. This testimony nevertheless indicates Perry's awareness that Chapman was the intended recipient of at least one-third of the cocaine and that Chapman was the source of at least one-third of the money. In short, the evi-

dence suggests that Perry understood that he was dealing, albeit through an intermediary, with Chapman.

■ Second, even if there were a variance in this case, the district court's failure to enter a judgment of acquittal would not be reversible error, for Perry has not alleged, let alone demonstrated, any prejudice resulting from the asserted variance. In *United States v. Cosby*, 529 F.2d 143 (8th Cir.), *cert. denied*, 426 U.S. 935, 96 S.Ct. 2647, 49 L.Ed.2d 386 (1976), the court observed:

> Fed.R.Crim.P. 52(a) provides that an error, defect, irregularity, or variance that does not affect substantial rights is to be disregarded. A variance between indictment and proof in a criminal case may prejudice a defendant substantially if it prevents him from presenting his defense properly, if it takes him unfairly by surprise, or if it exposes him to the risk of double jeopardy. But unless such a variance prejudices the defendant in one or more of those ways, it is not fatal.

*Id.* at 146. Similarly, in *United States v. Ramos*, 666 F.2d 469 (11th Cir.1982), this court noted:

> A variance warrants reversal solely if it is prejudicial, meaning that it affects substantial rights, "either by insufficiently informing him of the charges against him such that he is taken by surprise and prevented from presenting a proper defense, or by affording him insufficient protection against reprosecution for the same offense." *United States v. Juarez*, 573 F.2d 267, 278 (5th Cir.1978).

*Id.* at 477. Regardless of who is identified as the distributee, the allegation at issue plainly refers to the drug transaction which occurred at the Municipal Auditorium in Columbus on June 30. It is difficult to imagine how Perry would have presented his defense—that the four met to discuss the sale of recording equipment—differently or what other defenses he would have presented had Count II named Hinton, Sr. instead of Chapman. In addition, the trial transcript reflects no unfair surprise attrib-

utable to the wording of the allegation. Finally, we perceive no threat of double jeopardy. *See United States v. Lewis*, 426 F.2d 266, 267 (9th Cir.1970). Finding neither a variance nor any prejudice, we hold that there was no reversible error in this regard.

## III. DENIAL OF MOTION TO SUPPRESS

■ Perry argues that at the suppression hearing, he succeeded in showing a reasonable expectation of privacy in the studio and that the district court therefore erred in denying the motion to suppress on standing grounds. Perry's proof consisted of the testimony of two witnesses. First, his mother testified that she owned the studio, that Perry operated it, that he rented it from her, and that she did not have a set of keys to it. Then the karate instructor at the studio testified that Perry was the general manager, that Perry was named on the business license and the certificate of occupancy, that the studio was generally open to the public until 8:30 p.m., and that it was closed around 7:15 p.m. on the evening of August 16. He also testified that only he, Perry and the dance instructor had sets of keys to the studio and that each of them had the right to exclude others.

At the conclusion of the hearing, the court stated:

> I don't think he has [established standing] either ....
>
> \*   \*   \*   \*   \*   \*
>
> I don't think you've made the necessary showing about it.
>
> \*   \*   \*   \*   \*   \*
>
> I say I don't think you've made the necessary showing of an expectation of privacy, standing.
>
> \*   \*   \*   \*   \*   \*
>
> And I don't see there is any standing from the testimony of the witnesses I've heard. I don't see that this man by their testimony has shown standing.

Unfortunately, from these statements alone, we cannot discern the extent to

which the testimony given was credited, if at all, or the facts upon which the ruling was based.

On the one hand, there were credibility questions with respect to both witnesses. On cross-examination, Perry's mother could not remember the purchase price of the studio and, having claimed to own a shopping center, could not remember its address. As the prosecutor explained in response to defense counsel's objections, "I'm testing the credibility of the woman." The karate instructor initially testified that Perry lacked the authority to exclude others; only after defense counsel had asserted the contrary to the court in his presence did the witness state that Perry had the right to exclude. In response to defense counsel's suggestion that the witness be sequestered, the court had observed, "it's too late. That's too late. He knows what you want him to say now."

On the other hand, the prosecutor argued that the testimony was insufficient to establish standing not because it was unworthy of belief, but because it did not relate to Perry's subjective expectation of privacy. At the conclusion of the testimony, the following colloquy took place:

> THE COURT: What do you say, Mr. Wilson?
>
> MR. WILSON: I say there's still no standing, absolutely no standing whatsoever. No expectation of privacy, has been no testimony about the defendant, the movant in this motion, having an expectation of privacy in that place. In fact, it's operated as a business, they had chairs in there, people come and sit and look at what's going on. And unless the defendant can get on the stand and testify as to his expectation of privacy, I submit that as of this moment there has been none established.
>
> THE COURT: I don't think he has either, Mr. Swearingen.

Notwithstanding the dissent's contrary assertion, it is unclear from the hearing transcript whether the district court's ruling rested on a credibility determination, a conclusion that the situation described by the witnesses could not support a legitimate expectation of privacy, or a combination of both. We are, of course, reluctant to speculate as to the actual basis of the ruling. And inasmuch as they may lead to different results, we are unable to dispose of Perry's claim by exploring all of the various possibilities. Because the district court failed to make findings of fact sufficiently specific to enable us to review its conclusion of law, we remand for further findings while retaining jurisdiction. *See United States v. Torres*, 720 F.2d 1506, 1510 (11th Cir.1983).[1]

## IV. RESTRICTION OF CROSS–EXAMINATION

■ Finally, Perry asserts that the district court erred in restricting his cross-examination of Hinton, Jr., specifically in sustaining the Government's objection to his questions regarding the amount of cocaine involved in Hinton, Jr.'s prior conspiracy prosecution. The standard governing claims of this sort was succinctly stated by the court in *United States v. Tolliver*, 665 F.2d 1005 (11th Cir.), *cert. denied*, 456 U.S. 935, 102 S.Ct. 1991, 72 L.Ed.2d 455 (1982):

> The extent of cross-examination with respect to an appropriate subject of inquiry is generally within the sound discretion of the trial court, and the trial court's decision will not be disturbed on review unless an abuse of discretion is present. There is, however, a sphere which a trial judge may not impinge, for the "discretionary authority to limit cross-examination comes into play only after there has been permitted as a matter of right sufficient cross-examination to satisfy the Sixth Amendment."

*Id.* at 1008 (citations omitted); *see also United States v. Sonntag*, 684 F.2d 781, 788 (11th Cir.1981) ("as long as the limitation [of cross-examination] does not inter-

---

**1.** As a result of our remanding, the admissibility of the evidence seized at the studio on August 16 remains an open question. Accordingly, we decline to address Perry's sufficiency of the evidence claim at this juncture.

fere with the defendant's right of confrontation, this ruling is also discretionary with the trial court"). In this case, we hold that the district court's limited interference with the cross-examination of Hinton, Jr. constituted neither an infringement of Perry's confrontation right nor an abuse of the court's discretion.

The evidence most damaging to Hinton, Jr.'s credibility was brought out on direct examination. Hinton, Jr. testified that he had recently been convicted of participating in a cocaine conspiracy, that he had received a six-year prison sentence, that he had not yet begun to serve that sentence, and that he hoped for favorable treatment in return for his cooperation with narcotics officers. He stated, "No promises were made, just only that things that were known by us and things that we did would help us—that they would be reported to the proper authorities that could help us." And he answered affirmatively the question, "You hope your sentence will be reduced?" The scope of cross-examination allowed was quite broad. Defense counsel elicited testimony regarding Hinton, Jr.'s prior felony convictions and sentences for food stamp fraud, possession of marijuana, and possession of cocaine. He also inquired briefly about the circumstances under which the Hintons became involved with the DEA. With respect to the cocaine conspiracy in Kentucky, defense counsel established that Hinton, Jr. had had 29 codefendants. Indeed, the court ruled out but one line of questioning, that aimed at revealing the quantity of cocaine involved and similar details of the crime.

Perry contends that the amount of cocaine related to the severity of the crime, which in turn related to Hinton, Jr.'s prospects of early parole and early release, as well as sentence reduction, which in turn related to his motivations for testifying in the Government's behalf. In limiting cross-examination, Perry argues, the court improperly curtailed his efforts to challenge the witness' credibility. The problem with this assertion is two-fold. First, Hinton, Jr.'s testimony regarding the number of codefendants served to demonstrate the severity of the crime. Second, and more important, the district court's ruling by no means prevented defense counsel from exploring Hinton, Jr.'s motives with respect to avenues of relief other than sentence reduction, which the Government had already exposed on direct examination. Counsel was free to ask questions directly addressing such motives, but simply declined to do so. Emphasizing the prosecutor's reference to him as the Hintons' "source of supply" in opening, Perry also contends that his inquiry into the specifics of the cocaine conspiracy was necessary in order for him to dispell the implication that he had been involved in that conspiracy. Again, the court did nothing to hinder defense counsel's exploration of this topic. While he could not ask about the quantity of cocaine, he might well have asked whether Perry had participated in the earlier conspiracy. Hence we conclude that Perry was afforded sufficient cross-examination to satisfy the Sixth Amendment.

In ruling in the Government's favor, the district court declared:

> There's no use in trying that case. He's —he admits that he pled guilty and it's a felony charge, says he got a six-year sentence. So I don't see why we'd be interested in the details of the offense.
>
> *    *    *    *    *    *
>
> I don't see where it has any relevance here though.

Having determined that the evidence was irrelevant, perhaps loath to confuse the jury by retrying an unrelated case, and perhaps motivated "by considerations of undue delay, waste of time, or needless presentation of cumulative evidence," Fed. R.Evid. 403, the district court was certainly justified in restricting cross-examination as it did. Thus we conclude that the court acted well within the scope of its discretion.

AFFIRMED in part, REVERSED in part and REMANDED for further findings.

FAY, Circuit Judge, concurring in part and dissenting in part:

While fully agreeing with most of that which Judge Kravitch has written for the

court, I respectfully dissent from her conclusion in part III dealing with the denial of the defendant's motion to suppress. Although the trial judge's comments could have been more detailed, my interpretation of his ruling is that he placed little or no credence in the testimony of the witnesses on this issue. It seems to me that such is clear from the record. I would affirm the convictions in all respects.