572 So.2d 232 (1990)
STATE of Louisiana
v.
Naquel D. RUFFIN.
No. KA 89 2010.
Court of Appeal of Louisiana, First Circuit.
November 14, 1990.
Writ Denied March 1, 1991.
*233 Bryan Bush, Dist. Atty. by Mike Erwin, Asst. Dist. Atty., Office of Dist. Atty., Baton Rouge, for plaintiff-appellee.
Office of Public Defender, Baton Rouge, for defendant-appellant.
Before COVINGTON, C.J., LANIER, J., and VIAL LEMMON[*], J. Pro Tem.
*234 LANIER, Judge.
The defendant, Naquel D. Ruffin, was charged by grand jury indictment with first degree murder, in violation of La.R.S. 14:30. He pled not guilty and, after trial by jury, was found guilty as charged. He received a sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. This appeal followed.

FACTS
In December of 1987, Thomas Gallagher, a U.S. Post Office employee, was arrested and charged with possession of marijuana and possession of cocaine with intent to distribute. In June of 1988, U.S. Postal Inspectors Paul Krug and Garry Johnson contacted Gallagher and asked if he would cooperate in a joint investigation by postal inspectors and the East Baton Rouge Parish Sheriff's Office into the sale of drugs among postal employees. Gallagher agreed.
Subsequently, Antoine Thomas, a postal employee, contacted Gallagher and asked if Gallagher wished to buy cocaine. Gallagher and Postal Inspector Johnson arranged to meet Thomas on November 21, 1988, at the Holiday Inn on Siegen Lane in East Baton Rouge Parish, Louisiana, to purchase nine ounces of cocaine from Thomas for $8,500. The location for the cocaine transaction was later changed to the Best Western Inn on Airline Highway.
At approximately 4:30 p.m. on November 21, Thomas arrived at the Best Western Inn accompanied by Frederick Moore and the defendant. Moore and the defendant entered Room 331, where Gallagher and Johnson were waiting, while Thomas remained outside. Inside an adjoining room (Room 332), several sheriff's deputies and other law enforcement personnel monitored the conversation among Gallagher, Johnson, Moore, and the defendant through the use of an electronic transmitter. Moore and the defendant stalled, explaining that the man with the cocaine was apprehensive and did not want to enter the room. Instead, they offered to take the money outside and return to the hotel room with the cocaine. Gallagher and Johnson did not agree to this arrangement. They acted as if they were in a hurry to buy the cocaine and even produced the cash to show their readiness to deal.
During the conversation, the defendant produced a pistol. When it became apparent that Moore and the defendant intended to rob Gallagher and Johnson, a decision was made by the surveillance team in Room 332 to abort the operation and enter Room 331. Immediately thereafter, Deputy Gerald Simmons kicked in the door and burst into Room 331. The defendant immediately turned and fired a single shot, which struck Deputy Simmons in the face. Simultaneously, Gallagher and Johnson jumped on the floor for cover. Sergeant Charles Byrne and Corporal Terry Felton, the two deputies standing behind Deputy Simmons, immediately returned fire at the defendant, who also dove into a corner for cover. When the shooting stopped, Moore and the defendant were apprehended. Deputy Simmons died several hours later as a result of this single gunshot to his head.

JUROR CHALLENGE FOR CAUSE

(Assignment of error 2)[1]
The defendant contends that the trial court erred in granting the State's challenge for cause of a prospective juror. Specifically, he contends that prospective juror, Joynicee Henderson, was erroneously challenged for cause because of her alleged opposition to the death penalty. La. C.Cr.P. art. 798(2); Witherspoon v. Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968).
This erroneous allowance to the State of a challenge for cause does not afford the defendant a ground for complaint, *235 unless the effect of such a ruling is the exercise by the State of more peremptory challenges than it is entitled to by law. La.C.Cr.P. art. 800(B); State v. James, 431 So.2d 399, 403 (La.1983). Because the instant offense was a first degree murder prosecution, the State was allowed twelve peremptory challenges. La.C.Cr.P. art. 799. The record reflects that the State exercised only seven of those challenges. Therefore, the defendant may not complain of alleged trial court error in granting this challenge for cause. Furthermore, the defendant did not receive the death sentence in this case and, therefore, has no valid Witherspoon complaint. State v. Edwards, 406 So.2d 1331, 1346 (La.1981); State v. Faulkner, 447 So.2d 1139, 1143 (La.App. 1st Cir.), writ denied, 449 So.2d 1345 (La.1984).
This assignment of error is without merit.

REHABILITATION ON A CHALLENGE FOR CAUSE

(Assignment of error 4)
The defendant contends that the trial court erred in denying his challenge for cause of Joy Evans, a prospective juror.
La.C.Cr.P. art. 797 provides, in pertinent part:
The state or the defendant may challenge a juror for cause on the ground that:
. . . . .
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
. . . . .
(4) The juror will not accept the law as given to him by the court; ...
The trial court is vested with broad discretion in ruling on a challenge for cause, and his ruling will not be disturbed on appeal absent a showing of abuse of discretion. State v. Valentine, 464 So.2d 1091, 1095 (La.App. 1st Cir.), writ denied, 468 So.2d 572 (La.1985). In evaluating the fairness of a trial court ruling on voir dire, the entire examination must be considered. State v. Williams, 458 So.2d 1315, 1335 (La.App. 1st Cir.1984), writ denied, 463 So.2d 1317 (La.1985).
The defendant contends that the trial court erred in denying his challenge for cause of prospective juror, Joy Evans, based on her responses during voir dire examination. Specifically, he refers to her initial response indicating that she had a problem with the defendant's possible decision to not take the stand and her responses that she would automatically vote for the death penalty if the defendant were found guilty. However, the defendant fails to note that Ms. Evans was successfully rehabilitated on both points. Concerning the defendant's right to remain silent, Ms. Evans assured the trial court that she could set aside her personal feelings and apply the trial court's instructions. After examination by the trial court and defense counsel, she indicated that she would not automatically vote for the death penalty; instead, she stated that she would follow the trial court's instructions during the death penalty phase of the case.
Where a prospective juror has voiced an opinion seemingly prejudicial to the defense but, upon further inquiry or instruction by the court, demonstrates a willingness and ability to decide the case impartially according to the law and the evidence, a challenge for cause is properly denied. State v. Collins, 546 So.2d 1246, 1252-1253 (La.App. 1st Cir.1989), writ denied, 558 So.2d 599 (La.1990); State v. Sims, 529 So.2d 454, 456-457 (La.App. 1st Cir.), writ denied, 532 So.2d 764 (La.1988). See also State v. Comeaux, 514 So.2d 84, 93-94 (La.1987). Accordingly, we find no abuse of discretion by the trial court in denying the defendant's challenge for cause of this prospective juror.
This assignment of error is without merit.

*236 LIMITATION OF CROSS-EXAMINATION

(Assignment of error 8)
The defendant contends that the trial court erred in limiting his cross-examination of a State witness, Thomas Gallagher.
During the direct examination of Mr. Gallagher, the following colloquy occurred:
BY DEFENSE COUNSEL:
Q Mr. Gallagher, right?
A Yes, sir.
Q You indicated in your testimony that you were initially arrested for possession with intent to distribute?
A Yes, I was.
Q Okay. How many ounces, or what did you have? You had cocaine and marijuana, right?
A Yeah, there was a small bit of marijuana.
Q Okay. And how much cocaine?
A I really don't remember off-hand. I think it was about half-ounce or more than a half-ounce.
Q Okay. And how was (sic) you arrested, I mean, what happened?
A I was driving down Florida Boulevard
PROSECUTOR: Your Honor, State would object to going into this specifics. (sic) I think everyone has told what he was arrested for. I don't think it's proper impeachment to go into the details of every prior past act of a witness. I think it's improper impeachment.
DEFENSE COUNSEL: Well, Your Honor, he was subsequently convicted of this charge and I think I have the right to find out the facts and circumstances surrounding his arrest and conviction.
THE COURT: You have the right to explore the facts concerning his conviction, or anything that might affect his credibility, but going into the facts of the case, I find to be irrelevant, so I sustain the state's objection.
DEFENSE COUNSEL: Note my objection for the record, Your Honor.
THE COURT: So noted.
(R 856-857).
Louisiana Code of Evidence Article 609.1 provides, in pertinent part:
A. General criminal rule. In a criminal case, every witness by testifying subjects himself to examination relative to his criminal convictions, subject to limitations set forth below.
B. Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.
C. Details of convictions. Ordinarily, only the fact of a conviction, the name of the offense, the date thereof, and the sentence imposed is admissible. However, details of the offense may become admissible to show the true nature of the offense:
(1) When the witness has denied the conviction or denied recollection thereof;
(2) When the witness has testified to exculpatory facts or circumstances surrounding the conviction; or
(3) When the probative value thereof outweighs the danger of unfair prejudice, confusion of the issues, or misleading the jury.
The defendant argues that Mr. Gallagher might have been biased because of the State's leverage over him. As the above trial excerpt indicates, defense counsel was attempting to explore the details of Mr. Gallagher's arrest when the prosecutor objected to this line of questioning. However, in his brief to this court, the defendant states the alleged purpose for this line of questioning as follows:
Specifically, in the instant case, the defendant was entitled to establish whether or not Mr. Gallagher's cooperation with the State was obtained in exchange for the State's forbearance from pressing cocaine possession charges against him, and the gravity of the potential charges involved. Mr. Gallagher asserted on direct that the cocaine *237 charges were not part of the exchange. The defense was entitled to inquire into the likelihood that the cocaine charges were dropped for reasons totally unconnected with any agreement with the State. Mr. Gallagher later admitted that the cocaine was involved in the plea agreement leading to his participation in the meeting at the Best Western, but the defendant was prohibited from fully exploring the conflict in the witness' testimony, and in particular, the gravity of the cocaine charge against Mr. Gallagher. (Defendant's brief p. 16).
While we agree that the defendant was entitled to explore the reasons for Mr. Gallagher's cooperation with the State, we do not find that the trial court's ruling prevented the defendant from so doing. Initially, the State and the defendant in their briefs to this court stated that Mr. Gallagher's cocaine charge was dropped. Although Mr. Gallagher's testimony on this point was somewhat confusing, he finally clarified his testimony by saying he pled guilty to the reduced charge of possession of cocaine. This response leaves some confusion as to whether or not he was also convicted of possession of marijuana. In any event, when the trial court made the instant ruling, the following facts had already been established: (1) at his arrest, Mr. Gallagher possessed approximately one-half ounce of cocaine and a small amount of marijuana; (2) he pled guilty before being contacted by postal inspectors and asked to cooperate in the investigation of drug transactions among postal employees; (3) in exchange for his cooperation in this investigation, he was allowed to continue his employment at the post office and the postal inspectors agreed to make a sentencing recommendation to the trial court; and (4) for the possession of cocaine conviction, Mr. Gallagher was placed on probation for eighteen months and received a $2,000 fine. Considering these facts, we fail to see how any additional relevant information about Mr. Gallagher's cooperation in the instant case could have been elicited from further exploration of the details of his arrest. As noted above, the trial court ruled that the defendant could explore facts concerning Mr. Gallagher's conviction or affecting his credibility, but could not delve further into the facts of the arrest because such information was irrelevant. This ruling was correct. Compare U.S. v. Perry, 740 F.2d 854, 858-859 (11th Cir.1984).
This assignment of error is without merit.

SUFFICIENCY OF EVIDENCE

(Assignment of error 12)
The defendant contends that the evidence was insufficient to support the conviction.
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. La.C.Cr.P. art. 821; State v. King, 563 So.2d 449 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990).
La.R.S. 14:30 provides, in pertinent part:
A. First degree murder is the killing of a human being:
(1) When the offender has specific intent to kill or to inflict great bodily harm and is engaged in the perpetration or attempted perpetration of aggravated kidnapping, aggravated escape, aggravated arson, aggravated rape, forcible rape, aggravated burglary, armed robbery, first degree robbery, or simple robbery;
(2) When the offender has a specific intent to kill or to inflict great bodily harm upon a fireman or peace officer engaged in the performance of his lawful duties; ...
In his brief to this court, the defendant asserts alleged discrepancies between the testimony of Thomas Gallagher and Garry Johnson. He also makes a protracted attack upon the motive for Antoine Thomas' testimony, concluding that Thomas' testimony about the planned robbery was "highly suspect". The defendant contends that there was no plan for a robbery, or *238 that, if there was such a plan, he did not know of its existence. He states that he did not know that Deputy Simmons was a police officer. He also states that he did not have the specific intent to kill, or inflict great bodily harm upon anyone. The defendant argues that he "fired his gun in response to a startling event." On this basis, he asserts the facts of this case warranted only a conviction of manslaughter. La.R.S. 14:31(2)(a).
Mr. Thomas testified that Moore and the defendant did not have any cocaine. Instead, they planned to rob Gallagher and Johnson of the $8,500. The jury apparently believed this testimony. Gallagher and Johnson both testified that the defendant produced a gun and threatened to shoot them. This testimony was corroborated by the testimony of the law enforcement officers conducting surveillance in Room 332. This is sufficient evidence of attempted armed robbery. Before the shooting took place, Gallagher dove on the floor for cover and did not actually see the defendant shoot Deputy Simmons. Johnson saw the defendant turn and fire toward the door, although he did not see Deputy Simmons until the shooting stopped. However, both Sgt. Byrne and Cpl. Felton, who were behind Deputy Simmons, testified that they saw the defendant turn and fire at Simmons when he entered Room 331. While the defendant questions all of the testimony indicating that an attempted armed robbery was in progress, it cannot be denied that the defendant's gun was already drawn when Deputy Simmons burst into Room 331, which enabled the defendant to shoot Simmons immediately upon his entry into the room and before any of the officers could return fire. Furthermore, the fact that the defendant shot Simmons at close range indicates a specific intent to kill or inflict great bodily harm. State v. Navarre, 498 So.2d 249, 252 (La.App. 1st Cir. 1986); State v. Price, 498 So.2d 244, 247 (La.App. 1st Cir.1986), writ denied, 503 So.2d 474 (La.1987).
A rational trier of fact, viewing all of the evidence as favorably to the prosecution as any rational factfinder can, could have concluded that the State proved beyond a reasonable doubt that the defendant was guilty of first degree murder. La.R.S. 14:30(A)(1); State v. Mussall, 523 So.2d 1305 (La.1988). Having found the evidence sufficient to support a conviction under La. R.S. 14:30(A)(1), we do not reach the issue of whether or not the evidence was sufficient to support a conviction under La.R.S. 14:30(A)(2).
This assignment of error is without merit.

DECREE
For the foregoing reasons, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[*] Judge Mary Ann Vial Lemmon of the 29th Judicial District Court is serving as Judge pro tempore by special appointment of the Louisiana Supreme Court to fill the vacancy created by the illness and subsequent death of Judge Steve A. Alford, Jr.
[1] Assignments of error 1, 3, 5, 6, 7, 9, 10 and 11 were not briefed on appeal and are considered abandoned. Uniform Rules-Courts of Appeal, Rule 2-12.4.