**Danny R. ROBINSON, Appellant–
Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 39A05–9208–CR–296.

Court of Appeals of Indiana,
Fourth District.

June 15, 1994.

Brent Westerfeld, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Geoff Davis, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

### STATEMENT OF THE CASE

Defendant–Appellant Danny R. Robinson appeals his conviction for dealing in cocaine, a class A felony.[1]

We affirm.

### ISSUES

Robinson raises the following issues for our review:

    1. Whether his fundamental rights to cross-examination and a fair trial were violated when a State witness refused to answer defense questions on Fifth Amendment grounds.

    2. Whether the trial court erred in permitting the State to refresh the recollec-

1. IND.CODE 35–48–4–1(1).

tion of a witness with case reports when the witness claimed little or no independent memory of the activities described within the report.

3. Whether the trial court erred in permitting a State witness to identify a substance as crack cocaine.

4. Whether a variance between the allegations of the charging information and the proof at trial necessitates reversal of his conviction.

5. Whether the trial court erred in admitting certain testimony about prior drug-related activities.

6. Whether the trial court erred in permitting testimony as to the weight of the cocaine delivered.

## FACTS

On January 9, 1990, confidential informant Marcus Ben Smith and Indiana State Trooper, M.E. Dexter, working undercover, met Robinson to buy cocaine from him. Smith had previously met Robinson in jail and had set up the meeting. In fact, he had set up a similar meeting in November of 1989, a meeting in which Robinson allegedly sold cocaine and marijuana to the pair.

On January 9, Dexter gave Robinson $280 to buy an eight ball of cocaine. Robinson left the area with the promise to return with the drug. Upon his return, he handed a plastic baggie of white powder to Smith, which Dexter quickly took possession of. The powder in the baggie was later analyzed and weighed at a police laboratory. The lab determined the baggie contained 3.23 grams of cocaine.

Robinson was arrested and charged with dealing cocaine and marijuana in November, 1989, and with dealing cocaine on January 9, 1990. A jury found Robinson not guilty on the charges pertaining to the November transaction and guilty on the dealing in cocaine charge pertaining to the January 9, 1990, transaction. Robinson now appeals his conviction.

Additional facts are given below as they pertain to the issues discussed.

## DISCUSSION AND DECISION

### I. DENIAL OF RIGHT OF CONFRONTATION

During a pre-trial deposition and at trial, Smith refused to give the details of drug transactions unrelated to his dealings with Robinson. On both occasions, Smith's refusal followed an advisement by the prosecutor of Smith's right against self-incrimination under the Fifth Amendment to the United States Constitution. The trial court ruled that Smith's invocation of the Fifth Amendment did not impermissibly limit cross-examination by Robinson.

Robinson contends the State's advisement to Smith, and the trial court's approval of the advisement, improperly denied him the right to cross-examination and a fair trial. He argues that Smith's refusal to answer questions about unrelated transactions prejudiced him by limiting his ability to inquire into the circumstances surrounding Smith's involvement in the January 9, 1990, transaction and limiting his inquiry into the extent of Smith's knowledge of drugs.

The right to confront witnesses granted by the United States Constitution includes the right of full, adequate and effective cross-examination, which is fundamental to a fair trial. *Andrews v. State* (1992), Ind.App., 588 N.E.2d 1298, 1302, *reh'g denied* (citing *Braswell v. State* (1990), Ind., 550 N.E.2d 1280). A trial court has the discretion to control the conduct of cross-examination, and only a clear abuse of discretion warrants reversal. *Id.* "A defendant objecting to a restriction on cross-examination must demonstrate how he was prejudiced by the trial court's action." *Id.*

In the present case, evidence of Smith's arrest on drug offenses, his agreement to set up twenty to thirty other drug dealers in exchange for withdrawal of the drug charges, his assistance in twenty-two drug investigations, and the fact that a possible sentence of over one hundred years was avoided by this assistance, was presented to the jury. Given this evidence, the jury was under no illusion concerning Smith's reasons

for testifying or his character.[2] Robinson was not prejudiced by the limitation placed upon his questioning by the trial court allowing Smith to invoke the Fifth Amendment.

■ Furthermore, Robinson was not prejudiced by his inability to inquire more directly into Smith's knowledge of drug dealing. In testifying about the January 9, 1990, transaction, Smith indicated only that he set up the transaction with Robinson and that Dexter accompanied him to the location of the transaction. Dexter provided the details of the transaction. Smith's knowledge of drug dealing was irrelevant to his testimony about the events of that day; the particulars of the transaction, including the nature and weight of the powder contained in the baggie, were provided by Dexter and a police chemist.

Robinson argues that prejudice should be presumed. In support of his argument, he cites *Pigg v. State* (1992), Ind., 603 N.E.2d 154.

In *Pigg,* the defendant argued that he was denied a right to proper cross-examination under the Sixth Amendment to the United States Constitution when the trial court sustained a relevancy objection to questions about an informant's address. *Id.* at 155. Our supreme court outlined cases discussing the discretion possessed by courts to limit cross-examination and held that prejudice is presumed where an informant is the sole witness to a controlled buy with the defendant and there has been no *in camera* hearing affording a defendant the opportunity to show prejudice. *Id.* at 157. In so holding, the court distinguished *Corbin v. State* (1990), Ind., 563 N.E.2d 86, wherein the court held that an *in camera* hearing was not required and prejudice was not presumed when an informant is not the sole witness and his testimony is consistent with the testimony of other witnesses. *Id.* at 156.

In the present case, the trial court conducted *in camera* hearings in which Robinson was given an opportunity to show how he would be prejudiced by Smith's decision not to incriminate himself by testifying about uncharged and unrelated drug dealings. After considering Robinson's arguments, the trial court determined that such testimony was not relevant. As discussed above, we also find the testimony to be irrelevant. Thus, we hold that the trial court did not abuse its discretion in limiting cross-examination of Smith.

## II. REFRESHING MEMORY OF THE WITNESS

Robinson contends the trial court committed reversible error in allowing the State to use a police report to refresh Smith's memory about the November, 1989, and January 9, 1990, transactions. We disagree.

■■ As a general rule, it is acceptable to revive the memory of a witness by calling his attention to any thing, event, or fact having relation to the subject under inquiry. *Ward v. State* (1982), Ind., 438 N.E.2d 966, 968. The memory of a forgetful witness may be refreshed by a written memorandum prepared by himself or someone else. *Gaunt v. State* (1983), Ind., 457 N.E.2d 211, 216.

■ The record shows that the State made two attempts to refresh Smith's memory. The State first attempted to refresh Smith's memory about the November, 1989, transaction. The State further attempted to refresh Smith's memory about the date of the January, 1990, transaction. Even if we assume *arguendo,* that the trial court committed error in allowing the State to refresh Smith's memory about the November, 1989, transaction, there is no reversible error because Robinson was acquitted of the charges arising from that transaction. Furthermore, he specifically withdrew any objection to the refreshment of memory about the exact date of the second transaction. There is no basis to assert error when no objection was maintained at trial.

## III. IDENTIFICATION OF CRACK COCAINE

■ Robinson contends the trial court committed reversible error in allowing Smith

---

2. We note that Smith's trial testimony was almost exclusively directed toward the events which occurred in November of 1989. The jury obviously did not believe this testimony, as it found Robinson not guilty of the charges arising from the November, 1989, events.

to testify that he was offered a pipe with crack cocaine in it during the November, 1989, transaction. We disagree.

■■■■■ Before ever testifying about the cocaine in the pipe, Smith testified, without objection, that during the same transaction, Robinson handed him "cocaine." (R. 768). Dexter testified, without objection, that Robinson's partner was "rocking up cocaine" and preparing it to be smoked from a pipe. (R. 902–903). Reversal may not be predicated on the admission of evidence when evidence of the same probative value is admitted without objection. *Fozzard v. State* (1988), Ind., 518 N.E.2d 789, 792. Furthermore, Smith's identification of the drug, even if error, was harmless because Robinson was acquitted of the charges arising from the November, 1989, transaction.

### IV. VARIANCE BETWEEN THE CHARGING INFORMATION AND EVIDENCE AT TRIAL

Robinson contends a material variance existed between the information filed and the proof at trial. Specifically, he contends that the variance was material because the charging information asserted that he delivered the cocaine to Dexter while the evidence at trial showed that he handed the drug to Smith and Dexter removed it from Smith's possession.[3]

■■■■■ A variance occurs where there is a difference between the crime charged and the proof adduced at trial. *Graham v. State* (1985), Ind.App., 480 N.E.2d 981, 992, *reh'g denied, trans. denied, cert. denied* 479 U.S. 1007, 107 S.Ct. 646, 93 L.Ed.2d 702 (1986). A variance will require reversal only if the variance is material. *Grassmyer v. State* (1981), Ind., 429 N.E.2d 248, 256. A variance is material only if it misleads the defendant in the preparation of his defense or if it subjects him to the likelihood of another prosecution for the same offense. *Dellenbach v. State* (1987), Ind.App., 508 N.E.2d 1309, 1312.

The specific question of whether a material variance exists when an information indicates

delivery to one person and the proof at trial indicates that the defendant actually handed the controlled substance to the person's cohort has not been decided in our state. However, in *United States v. Perry* (11th Cir.1984), 740 F.2d 854, a case we find persuasive, the Eleventh Circuit did consider the question. In *Perry,* the defendant was charged with distributing cocaine to Chapman, an undercover police officer. The proof at trial established that Perry actually handed the cocaine to an informant who was working with Chapman and the informant then handed the cocaine to Chapman. The court rejected Perry's contention that a material variance existed. In doing so, it stated:

> We disagree for two reasons. First, there is no variance between the allegation in question and the proof at trial. To be sure, the testimony of the Government's witnesses establishes that Perry never openly discussed the sale of cocaine with Chapman, that Perry did not give the cocaine directly to Chapman, and that Perry did not receive the last $1,550 directly from Chapman. This testimony nevertheless indicates Perry's awareness that Chapman was the intended recipient of at least one-third of the cocaine and that Chapman was the source of at least one-third of the money. In short, the evidence suggests that Perry understood that he was dealing, albeit through an intermediary, with Chapman.
>
> Second, even if there were a variance in this case, the district court's failure to enter a judgment of acquittal would not be reversible error, for Perry has not alleged, let alone demonstrated, any prejudice resulting from the asserted variance.... It is difficult to imagine how Perry would have presented his defense—that the four met to discuss the sale of recording equipment—differently or what other defenses he would have presented had Count II named Hinton, Sr. instead of Chapman. In addition, the trial transcript reflects no unfair surprise attributable to the wording

---

**3.** "Delivery" of a controlled substance includes both actual and constructive transfers. *Harkrad-* *er v. State* (1990), Ind.App., 553 N.E.2d 1231, 1233.

of the allegation. Finally, we find no threat of double jeopardy.

740 F.2d at 856–857. (citations omitted).

■ In the present case, the evidence established that even though Robinson handed the cocaine to Smith he knew that Dexter was the actual buyer. Prior to Robinson's trip to obtain the cocaine from his source, Dexter was the one who questioned him about how long the process would take. It was Dexter who gave Robinson the money to pay the supplier, and it was Dexter who warned him that he needed to return in two hours from the supplier with either the money or the cocaine. Under these circumstances, it is clear that Robinson was delivering the cocaine to Dexter when he handed the baggie of cocaine to Smith. Thus, there was no variance.

■ Even if a variance existed, Robinson failed to show that reversible error resulted. Robinson makes no attempt to show how his entrapment defense would have changed had the information specifically mentioned Smith instead of Dexter. Additionally, nothing in the record reflects undue surprise due to the wording of the information. Furthermore, there is no showing that Robinson has been placed in danger of double jeopardy.

## V. HEARSAY

Robinson contends that the trial court committed reversible error by overruling his hearsay objections. The first objection was to Smith's testimony on redirect that he had "heard that [Robinson] dealt a lot of drugs." (R. 831). The second objection was to Dexter stating that a person named Jimmy Robinson (J.R.) had informed him that Robinson was a participant in a drug transaction prior to the charged transactions.

During a pretrial deposition, defense counsel questioned Smith about meeting Robinson in jail, an event which took place in *April, 1989.* The following exchange occurred:

Q: Okay, and what did you personally know about Danny Robinson *at that time?*

A: I just heard that he dealt a lot of drugs.

Q: What did you personally know?

A: What did I personally know? I didn't know nothing about the man; just what I heard.

(S.R. 129). (emphasis supplied).

During cross-examination of Smith at trial, defense counsel asked Smith what he personally knew about Robinson in *November, 1989.* Smith answered "I knew he was dealing drugs." (R. 822). Defense counsel responded by referring to the second deposition question and answer given above. On redirect, the State read, over objection, the first deposition question and answer to the jury.

■ The trial court's approval of a reading of the first deposition question and answer served to place the second question and answer in context. When a party submits part of a deposition, the opposing party is permitted to place that part in context by referral to other pertinent parts of the same deposition. *Johnston v. State* (1988), Ind., 517 N.E.2d 397.

Moreover, admission of the second deposition question and answer was cumulative of the answer given by Smith in response to Robinson's own question. Reversal may not be predicated on the erroneous admission of evidence when evidence of the same probative value is admitted without objection. *Fozzard,* 518 N.E.2d at 792.

On direct examination, Dexter was asked when he first met Robinson. Dexter testified, over objection, that Robinson was present during an LSD transaction in the summer of 1989. He also testified that he did not know Robinson's name until told by J.R. On cross-examination, Dexter admitted that his belief about Robinson's presence was based wholly on J.R.'s statement.[4] On further questioning, Dexter admitted that he did not actually know whether Robinson was at the LSD transaction.

---

**4.** Dexter stated, "I'm going on what [J.R.] told me upon the arrest." (R. 939). From the context of his testimony on direct, it is clear that Dexter was relying on J.R.'s representation that Robinson was present during the sale of the LSD.

Upon learning of Dexter's reliance on the third party's belief, Robinson objected on the basis that Dexter's statements were hearsay. He also requested a mistrial. The trial court denied his objection and request. Robinson contends the trial court committed reversible error in doing so. He states that the admission of the statements had a prejudicial effect on his entrapment defense.

Hearsay is defined as an out-of-court statement offered in a judicial proceeding to prove the truth of the matter asserted therein. Ind.Evidence Rule 801(c); *Williams v. State* (1989), Ind., 544 N.E.2d 161, 162, *reh'g denied.* Hearsay is inadmissible in court unless it fits within some exception to the hearsay rule. Evid.R. 802. Hearsay is excluded from judicial proceedings because "its admission defeats the criminal defendant's right to confront and cross-examine witnesses against him." *Williams,* 544 N.E.2d at 162. The erroneous admission of hearsay warrants remedial action on appeal only if such error caused prejudice to the defendant's substantial rights. *Hall v. State* 634 N.E.2d 837, 843, (Ind.App.1994).

In the present case, we agree with Robinson that Dexter's restatement of J.R.'s belief about Robinson's prior involvement in drug transactions was hearsay. However, we find that there was substantial evidence independent of this hearsay which established Robinson's predisposition to deliver illegal drugs. Robinson told Smith that when they got out of jail that they could "get together and do some dealings." (R. 723). In his conversations with Dexter, Robinson demonstrated a willingness to sell cocaine. He also demonstrated his ability to procure the illegal drug. These factors were sufficient to show predisposition. *See Gitary v. State* (1987), Ind.App., 503 N.E.2d 1241. Admission of J.R.'s statement was harmless.

## VI. FOUNDATION FOR CHEMIST'S TESTIMONY

William Boles, a forensic chemist at the Indiana State Police Laboratory in Evansville, weighed the cocaine involved in the January 9, 1990, transaction. He testified that the cocaine weighed 3.23 grams. Robinson contends that Boles should not have been allowed to testify absent evidence of the accuracy of the scales used.

In order to establish the accuracy of radar and speedometers, the State must prove the apparatus was properly set up and properly tested. *Denton v. State* (1979), Ind.App., 398 N.E.2d 1288, 1289. By analogy, we have held that in a weight violation case, the State must prove that the scales were tested before and after their use. *Id.* The burden of producing evidence then shifts to the defendant. *Id.* The question of accuracy is ultimately a question for the trier of fact. *Burton v. State* (1992), Ind.App., 590 N.E.2d 1129, 1230.

In the present case, Boles testified that he weighed the cocaine with a balance which was checked and calibrated annually by an outside vendor. According to Boles, the weights used to calibrate the scales in the lab are traceable to the National Bureau of Standard Weights. Boles weighed the cocaine on January 26, 1990. The balance was calibrated for accuracy on November 15, 1989, and September 11, 1990, both before and after Bole's use thereof. Boles testified that he was unaware of the laboratory ever reporting incorrect weights during his twelve years of employment with the State Police. Robinson did not rebut this evidence. The evidence was sufficient to indicate the accuracy of the scales used to weigh the cocaine.

### CONCLUSION

Robinson's conviction for dealing in cocaine is affirmed.

Affirmed.

MILLER and RUCKER, JJ., concur.