842 So.2d 1143 (2003)
STATE of Louisiana
v.
Reginald WILLIAMS.
No. 2002-KA-0260.
Court of Appeal of Louisiana, Fourth Circuit.
March 12, 2003.
Harry F. Connick, District Attorney, Leslie Parker Tullier, Assistant District *1144 Attorney, New Orleans, LA, for Plaintiff/Appellee.
Patrick J. Costa, New Orleans, LA, for Defendant/Appellant.
(Court composed of Judge JOAN BERNARD ARMSTRONG, Judge PATRICIA RIVET MURRAY and Judge JAMES F. McKAY III).
JOAN BERNARD ARMSTRONG, Judge.

STATEMENT OF CASE
The defendant, Reginald Williams, was charged by bill of information on November 6, 2000, with second degree kidnapping in violation La. R.S. 14:44.1. The defendant pled not guilty at arraignment. A preliminary hearing was held on December 18, 2000, and the trial court found probable cause. The State also filed a notice of intent to introduce at trial evidence of other crimes by the defendant. A Prieur hearing on the State's motion was conducted on January 22, 2001. On March 9, 20001, the trial court granted the State's motion to use evidence of other crimes.
On April 24, 2001, the defendant selected trial by judge. The State called Officer Steven Phillips and Lilly Riley. The defense moved for a directed verdict, which the trial court denied. The court found the defendant guilty as charged.
The defendant filed a motion for new trial, and on June 6, 2001, the trial court denied the motion. The defendant waived all legal delays, and the trial court sentenced the defendant to serve five years in the custody of the department of corrections with the first two years to be served without benefit of probation, parole or suspension of sentence. The State filed a multiple offender bill of information, alleging the defendant to be a second felony offender. On November 9, 2001, the trial court found the defendant to be a second felony offender and sentenced the defendant to twenty years at hard labor in the custody of the Department of Corrections with the first two years to be served without benefit of probation, parole or suspension of sentence.
The defendant filed a motion to reconsider sentence. On November 20, 2001, after hearing argument, the trial court denied the motion. The defendant filed a motion for appeal, which was granted.

STATEMENT OF FACT
The record reflects that on August 15, 2000, Lilly Riley was at her mother's house when she called her husband, the defendant, to come pick her up. Williams refused, telling her that he was not in a good mood. Later, Riley went outside and was surprised to see her husband in the front yard. Initially, Riley was reluctant to leave with Williams. Apparently the two had experienced problems in their marriage, and before leaving, Williams promised the victim's mother that he was not going to hurt her daughter, and that they were going to work it out.
The two stopped briefly at the store before going home. Riley testified that her husband did not speak during the drive. Once inside the house, Williams told Riley "You know, I'm gonna knock your ass off, huh. You better not try to run." Riley chose otherwise, and ran down the steps and outside with Williams chasing behind her. Riley testified that Williams grabbed a shovel which was leaning against the wall of the house and blocked her path. He told her to get back in the house saying, "I knock your ass over with this shovel if you try to run. You gonna get back in that house." Riley stated that she went back inside so he wouldn't hit her.
Once inside, Williams latched and chained the door. Riley grabbed at the *1145 door handle with both hands. Riley testified that Williams pried her hands free and threw her onto the floor and started beating her. Riley lay on her stomach with her face down, and Williams sat on her back and beat her on the side of her head. During the struggle, Riley broke the glass table in the living room with her foot. As Williams was beating her he said, "I'm going to kill you. I'm going to beat you for two days and then they gonna find you stinking after that."
Riley was able to get up after Williams became tired. She went up the stairs. After she noticed that the phone had been removed from the socket, she jumped out the window. Riley stated that she jumped because she believed that he was going to "finish beating her, finish her off." Riley landed on a bush. The fall broke her foot in three places. Her arm and back were also injured. She also suffered a puncture wound on her leg.
Riley testified that once outside, she called to some children to call the police. Williams came outside, pushed her down and taunted her saying "ok you're trying to run huh." Riley pleaded with him to get away from her. A man came from across the street and helped her. Williams drove off in his car. After the police arrived, Riley was taken to Charity Hospital and treated. Her foot was put in a cast and she was released the next day.
The victim testified that the defendant had threatened her with knives a lot of times. She also related a previous incident involving her husband in which he had driven her to an isolated area of the city after the two had an argument. Williams told her that he was taking her where people take women and kill them. Riley testified that she ran from the car, but got back in the car after the defendant removed the tire iron from the trunk, because in his state of mind she was afraid he would hit her.

ERRORS PATENT
A review of the record for errors patent reveals none.

ASSIGNMENT OF ERROR NUMBER ONE
In his first assignment of error, the defendant contends that the evidence was insufficient to support his conviction for second degree kidnapping as defined by La. R.S. 14:44.1.[1] The standard of review as to the sufficiency of the evidence is whether, viewing the evidence in a light *1146 most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt proof of each element of the crime. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
In the instant case, the bill of information alleged that the defendant, committed second degree kidnapping by the forcible seizing and carrying the victim from one place to another, while the defendant was armed or reasonably led the victim to believe that he was armed with a dangerous weapon. La. R.S. 14:44.1 A(5), B(1).
The defendant asserts that the evidence was insufficient to establish the forcible seizing and carrying from one place to another element of the crime. The Louisiana Supreme Court has held that the term "from one place to another" "requires evidence that the offender relocated the victim from one physical setting or environment to another." State v. Davillier, 99-1204, p. 1 (La.12/10/99), 752 So.2d 149, 150. In Davillier, the "defendant dragged the victim by the hair from one side of her truck to the other and forced her to enter the cab, from where she ran and escaped." Id. The court found the facts insufficient to establish the crime as the defendant "had not yet moved her from the immediate physical environment in which his initial physical assault had taken place." Id.
Citing Davillier, in State v. Bowie, XXXX-XXXX, p. 23 (La.4/3/02), 813 So.2d 377, 393, the court likewise found that forcibly moving the victim from one room to another within the same structure was insufficient to establish that a forcible seizing and carrying "from one place to another" had occurred. See also State v. Arnold, 548 So.2d 920, 926 (La.1989) (cited in Bowie) ("[a] robber's moving a victim at knife point from one room to another for the purpose of opening a safe arguably should not be punished as a kidnapping.").
In the present circumstance, the evidence established that the defendant prevented the victim from leaving the residence by wielding the shovel and demanding that she go back inside. It could be argued that the victim's immediate physical environment changed when she was forced to reenter the home. Nevertheless, the defendant's moving of the victim from outside the door to inside the door would not meet the "from one place to another" element of second degree kidnapping. Bowie, supra.
In the instant case, a review of the transcript reveals however that the evidence presented at trial would have been sufficient to support a conviction for second degree kidnapping under a different subsection of La. R.S. 14:44.1, namely subsection A(3) or A(5) with subsection B(3). Read together with the common language of La. R.S. 14:44.1, these subsections provide:
A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
* * *
(3) Physically injured or sexually abused;
* * *
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
* * *
(3) The imprisoning or forcible secreting of any person.
*1147 Further, the evidence showed the defendant forcibly detained the victim inside the residence. During the encounter when she tried to escape he threatened her with a shovel, forcing her to go back inside the residence. In addition, the victim testified he beat her while they were inside the residence. As such, the evidence was sufficient to support a conviction under either subsection A(3) or A(5) and subsection B(3).
The problem is the bill of information did not charge the defendant with committing the crime under subsection B(3); the bill alleged the commission of second degree kidnapping under subsection B(1). The question we must consider is whether the defendant's conviction can be upheld based upon subsection B(3) even though the subsection alleged in the bill of information was subsection B(1). In two cases courts have held that a defendant's conviction for first degree murder need not be reversed where the evidence was insufficient to support a conviction under one subsection of La. R.S. 14:30 but the evidence was sufficient to convict the defendant under another subsection of that statute. See State v. Wright, XXXX-XXXX (La.12/4/02), 834 So.2d 974, State v. Ruffin, 572 So.2d 232 (La.App. 1 Cir.1990). However, it is unclear from either of these cases whether the State alleged both subsections in the indictment, used the short form indictment which did not specify with which subsection the defendant was being charged, or as here alleged only one subsection for which the State did not present sufficient evidence.
A somewhat similar situation arose in State v. Schrader, 518 So.2d 1024 (La. 1988). The defendant was charged with "first degree" murder, but because the crime occurred under a former statute which did not differentiate between "first" and "second" degree murder, the State later amended the indictment to charge him only with "murder."[2] At the time of the offense, "murder" was committed either (1) as a homicide with specific intent, or (2) as a homicide occurring during the perpetration of an enumerated felony. The State's answers to the defendant's bill of particulars alleged that the defendant committed the murder while engaged in the perpetration of aggravated arson, but it also alleged it was proceeding under subsection (1), the specific intent subsection. On the day of trial, the State apparently spotted the discrepancy and moved to amend its answers to reflect that it was proceeding under subsection (2) to "clarify" the record. Defense counsel objected, stating he had been expecting the State to have to prove intent to kill. The trial court allowed the amendment; the case proceeded to trial; and the defendant was convicted of manslaughter. On appeal, he alleged the trial court erred by allowing the State to amend the bill of particulars on the day of trial. The Court rejected this argument, stating:
The defense was clearly entitled to know under which subsection of R.S. 14:30 the state was proceeding. State v. Huizar, 414 So.2d 741 (La.1982); State v. Rogers, 375 So.2d 1304 (La.1979); State v. Johnson, 365 So.2d 1267 (La. 1978). Nevertheless, as set forth in State v. Unzueta, 337 So.2d 1102, 1103-04 (La.1976), "[w]hile the bill of particulars is intended to assure the defendant a full understanding of the charge in order that he might, in fairness, properly defend himself, it was never intended as a trap for the unwary district attorney. *1148 It is for this reason that Article 485 of the Code of Criminal Procedure permits the district attorney to cure a defect in a bill of particulars." The First Circuit relied on Unzueta in denying defendant relief on this point. See, Schrader, 506 So.2d at 871. Of course, Art. 485 addresses only those defects which might give rise to a motion to quash, not erroneous answers which may mislead counsel and impair preparation of the defense. In this case, however, the state had clearly informed counsel of how it intended to prove its case. The question of intent was a matter of inference arising from the circumstances of the case, if the state chose to make the argument at trial. R.S. 15:445. The apparent discrepancy in the state's answers should have alerted counsel that the prosecution had simply referred to the wrong subsection of the statute. In any event, the defense efforts to subpoena its own arson expert for trial show clearly that counsel knew exactly where the issues would be joined at trial and that the state's answers as a whole fairly informed the defendant of the nature of the charge against him.
Schrader, at pp. 1029-1030.
In the instant case, the bill of information listed the wrong subsection of the statute under which the defendant was being tried. The State's answer to the bill of particulars did not specify what subsection of the statute under which it was proceeding; it merely listed: "14:44.1." The answer also referred to an attached incident report, but that report is not in the record before this court, and it is unclear how much information was contained in the report. However, defense counsel was present at the suppression hearing held five months prior to trial where the victim's testimony included her abortive attempt to escape, the defendant's threats with the shovel, and his beating of her once he got her back inside the residence. It is also apparent that defense counsel had prepared his case based upon the assumption that the defendant had been charged under subsection B(3), not B(1) as alleged in the bill of information. At the conclusion of the testimony in the case, defense counsel moved for a directed verdict, stating:
When I came here this morning I thought that they were combining A3 with B3 or A3 and 5 with B3.... But that's not what the Bill of Information says. We read the Bill of Information, they're combining A3 and 5 with B1.... Now I thought they were going to say the imprisoning [or] forcibly secreting of any person.... But now that's not what the Bill of Information calls for. It calls for the forcible seizing and carrying of any person from one place to another.... And they have not proved that element from this testimony. And that's what's in this Bill of Information to surprise [sic], I'll tell you.
Obviously, defense counsel was under no obligation at the time he finally looked at the bill of information (which apparently occurred sometime on the day of trial) to point out to the State that it had alleged a subsection for which it probably could not provide sufficient evidence. However, this is not a case where counsel had been misled as to what evidence the State was planning to present and was unprepared to meet the allegations in the bill of information. This case is not as clear-cut as that in Schrader, where the bill of particulars listed both the subsection describing the aggravating element actually presented at trial as well as the wrong subsection.
We find that the holdings of Wright, Ruffin, and Schrader are similar enough to encompass the situation in this case.
*1149 Accordingly, this assignment is without merit.

ASSIGNMENT OF ERROR NUMBER TWO
In his second assignment of error, the defendant argues that La. R.S. 14:44.1(B)(1) is unconstitutionally vague.
Statutes are presumed valid and their constitutionality should be upheld whenever possible. State v. Griffin, 495 So.2d 1306, 1308 (La.1986). Louisiana criminal statutes must be "given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." La.R.S. 14:3. However, vague statutes must fall because they violate the due process clauses of the United States Constitution, amend. XIV, and the Louisiana Constitution, art. I, §§ 2 and 13. A penal statute is unconstitutionally vague if it does not give persons of reasonable intelligence adequate notice that certain conduct is proscribed and punishable by law or if it does not provide sufficient standards by which guilt or innocence may be determined. Kolender v. Lawson, 461 U.S. 352, 357-358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983); Palmer v. City of Euclid, 402 U.S. 544, 545, 91 S.Ct. 1563, 1564, 29 L.Ed.2d 98 (1971); State v. Azar, 539 So.2d 1222, 1224 (La.), cert. denied, 493 U.S. 823, 110 S.Ct. 82, 107 L.Ed.2d 48 (1989); State v. Pierre, 500 So.2d 382, 384 (La.1987).
State v. Sandifer, 95-2226, pp. 8-9 (La.9/5/96), 679 So.2d 1324, 1331.
The First Circuit Court of Appeal considered the same issue in State v. Steward, 95-1693, p. 13 (La.App. 1 Cir. 9/27/96), 681 So.2d 1007, 1014 and stated:
We find no ambiguity in the second degree kidnapping statute. The language of the statute is clear and readily understandable, gives notice of what conduct is proscribed and provides adequate standards for determining the guilt or innocence of the accused. Any reasonable person can understand what is meant by forcibly seizing and carrying a person from one place to another.
This assignment is without merit.
For the foregoing reason the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The statute provides:

A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is:
(1) Used as a shield or hostage;
(2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony;
(3) Physically injured or sexually abused;
(4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or
(5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:
(1) The forcible seizing and carrying of any person from one place to another; or
(2) The enticing or persuading of any person to go from one place to another; or
(3) The imprisoning or forcible secreting of any person.
C. Whoever commits the crime of second degree kidnapping shall be imprisoned at hard labor for not less than five nor more than forty years. At least two years of the sentence imposed shall be without benefit of parole, probation, or suspension of sentence.
The provisions of this statute apply when any occurrence mentioned in Subsection (B) combines with any occurrence enumerated in Subsection (A).
[2] The crime occurred in 1970, prior to the 1973 delineation between "first" and "second" degree murder.