STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

06-174
(consolidated with 06-175)

STATE OF LOUISIANA

VERSUS

S.D.G.

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 271390
HONORABLE HARRY FRED RANDOW, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and
Michael G. Sullivan, Judges.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED.
REMANDED WITH INSTRUCTIONS.**

James C. Downs
District Attorney
701 Murray Street
Alexandria, LA 71301
(318) 473-6650
COUNSEL FOR APPELLEE:
    State of Louisiana

Edward Kelly Bauman
Louisiana Appellate Project
Post Office Box 1641
Lake Charles, LA 70602-1641
(337) 491-0570
COUNSEL FOR DEFENDANT/APPELLANT:
    S. D. G.

AMY, Judge.

Following a bench trial, the defendant was found guilty of aggravated rape in violation of La.R.S. 14:42 and aggravated incest in violation of La.R.S. 14:78.1. The defendant filed a motion for new trial, which the trial court denied after conducting a hearing. For the aggravated rape conviction, the defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He was sentenced to twenty years at hard labor for the aggravated incest charge. The trial court gave the defendant credit for time served and ordered the sentences to run concurrently. The defendant appeals, arguing insufficiency of the evidence and excessive sentence. For the following reasons, the defendant's convictions are affirmed, his sentences are affirmed as amended, and the matter is remanded with instructions.

## Factual and Procedural Background

The record indicates that C.G.[1] and D.G. are married and have a son, J.G. C.G. and D.G. lived in Deville, Louisiana, Rapides Parish, in a trailer located on the property of C.G.'s parents. C.G.'s brothers, S.D.G., N., and J., resided in their parents' home. According to J.G., in November 2000, he was left alone with C.G.'s brothers while C.G. and C.G.'s parents went to the hospital where D.G. was having a baby. J.G. testified that he and S.D.G. were alone in S.D.G.'s room and that S.D.G. was sitting on the floor and J.G. was sitting on his lap. He testified that S.D.G. pulled his pants down and "stuck his wee-wee in my butt." He stated that he was three years old at the time[2] and that this had happened three times.

---

[1] Pursuant to La.R.S. 46:1844, the initials of the parties involved have been used throughout. Because the initials of some of the parties are the same, other designations have been used respectively.

[2] At the time of trial, J.G. was eight years old.

D.G. testified that when she went to the hospital to deliver J.G.'s sister in November 2000, J.G. stayed with S.D.G, N., and J. D.G. testified that she was discharged from the hospital three days later and subsequently returned because of complications. She further testified that: "When I was in the hospital he was crying and he didn't want to go back with them and he wanted to stay with me. I didn't know what was going on and they told me it was a toothache, that he had a toothache." According to D.G., when she returned home, J.G. "wasn't himself" and she didn't know why. D.G. testified that around this time, J.G.'s teacher informed her that he had blood in his stool.

D.G. asked C.G.'s mother to drive them to the hospital, but C.G.'s mother, a L.P.N., refused, stating that J.G. was only constipated. D.G. testified that when her daughter was approximately six months old, the family moved to Columbia, Louisiana, Caldwell Parish. It was there that D.G. and her father went to the Caldwell Parish Sheriff's Office after J.G. disclosed his sexual abuse to C.G.'s grandmother and D.G.'s father.

D.G. and her father spoke with Officer Becky Ledbetter. According to Officer Ledbetter, D.G. stated that she filed a report with the Rapides Parish Sheriff's Office regarding what happened with J.G. and his uncles. Officer Ledbetter testified that "no one contacted her [D.G.] after she made that initial report, so I set up an appointment with her with Social Services after she told me some of the things the child had said and Social Services got involved and we took the child for an exam." Officer Ledbetter stated that she was present when James "Pat" Gilfoil of Social Services interviewed J.G. She testified that J.G. stated that S.D.G. and N. "pumped

him" and he pointed to his rear.[3] Officer Ledbetter further testified that she faxed a copy of the doctor's report to the officer that D.G. had previously contacted in Rapides Parish as the alleged incident happened outside of her jurisdiction.

Dr. Meade O'Boyle, a pediatrician with expertise in child abuse and neglect, testified that she met with J.G., D.G., and D.G.'s father. While J.G. was in another room, Dr. O'Boyle obtained J.G.'s history from D.G. and her father. Dr. O'Boyle testified that although J.G. had speech problems and did not talk too much, he was able to demonstrate that "they had hurt his pee-pee and they had put their penises in his anus. I mean he showed me that as best he could and then I was trying to find out what the names of the people were that did that to him and I asked about [J.] and I asked about [N.]. And then he spontaneously said [S.D.G.] did it too."

Dr. O'Boyle conducted a physical examination and a sexual abuse examination of J.G. J.G.'s physical examination revealed that he "had a scar at 6:00 to 7:00 o'clock which was red and was -- it was healed, but it was still at that red state that you get from a scar." According to Dr. O'Boyle, J.G.'s anus was swollen and he had poor sphincter tone, which she stated is common in child abuse victims. Based on her findings, Dr. O'Boyle opined that J.G. had been sodomized and that the appearance of J.G.'s scar indicated that the abuse had occurred months or weeks prior to his examination. Dr. O'Boyle testified that she forwarded the reports detailing her findings to the proper authorities.

An investigation ensued, and S.D.G. was charged with aggravated rape in violation of La.R.S. 14:42 and aggravated incest in violation of La.R.S. 14:78.1.

---

[3] We note that although Mr. Gilfoil's notes from the interview were not available, he testified that when he asked J.G. if J. and N. put their penises in his anus, J.G. informed him that S.D.J. did it as well.

3

S.D.G. waived his right to trial by jury, and a bench trial was held on September 21st and 22nd, 2005. The defendant was found guilty as charged; he filed a motion for new trial. Following a hearing, the trial court denied this motion. For the aggravated rape conviction, S.D.G. was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. He was sentenced to twenty years at hard labor for the aggravated incest conviction. The trial court gave S.D.G. credit for time served and ordered that his sentences run concurrently. S.D.G. appeals[4], asserting two assignments of error:

1. The verdict of the trial court was contrary to the law and evidence, as there was insufficient evidence, when viewed in a light most favorable to the prosecution, to find the Defendant guilty of all charges beyond a reasonable doubt.

2. Defendant's sentences amount to the needless imposition of pain and suffering and should be considered constitutionally excessive. In addition, the Trial Court erred in failing to rule on Defendant's Motion to Reconsider Sentence.

**Discussion**

*Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find two errors patent that are in need of correction.

Louisiana Revised Statutes 15:537(A) requires that diminution of sentence be denied to all offenders who are convicted of or plead guilty to sex offenses, including aggravated rape and aggravated incest. Here, the trial court failed to deny the

---

[4] The defendants' convictions are appealed under separate docket numbers and have been consolidated for review. While both convictions and sentences are discussed herein, *see also State of Louisiana v. S.D.G.*, 06-175 (La.App. 3 Cir. _/_/06), _ So.2d _ .

defendant diminution eligibility under La.R.S. 15:537(A) for both sentences imposed. In *State v. G.M.W., Jr.*, 05-392, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 460, 461, the court stated:

> We note that the second paragraph of La.R.S. 15:537 is clearly directed to the sentencing court, and the trial court's failure to include a denial of diminution of sentence thereunder renders Defendant's sentences illegally lenient. Pursuant to *State v. Williams*, 00-1725 (La.11/28/01), 800 So.2d 790 and La.Code Crim.P. art. 882, this court is authorized to recognize and correct illegally lenient sentences.

Here, the trial court's failure to deny diminution of sentence renders the defendant's sentences illegally lenient. Therefore, we amend the defendant's sentences to reflect that diminution eligibility is denied pursuant to La.R.S. 15:537(A). We also instruct the trial court to make a notation in the minutes reflecting the amendment.

In addition, the trial court failed to make any finding as to the defendant's ability to pay the victim's reasonable cost of counseling pursuant to La.R.S. 14:78.1(E), which provides in pertinent part: "In addition to any sentence imposed under Subsection D, the court shall, after determining the financial resources and future ability of the offender to pay, require the offender, if able, to pay the victim's reasonable costs of counseling that result from the offense." As the defendant has received an illegally lenient sentence, we remand the case for the trial court to determine whether the defendant is able to pay "the victim's reasonable costs of counseling that result from the offense," if any. If the defendant has sums available and sums are owed, the trial court shall amend the sentence for aggravated incest.

*Insufficient Evidence*

S.D.G. argues that the "evidence adduced at trial was insufficient to support his convictions [of aggravated rape and aggravated incest] under the *Jackson* standard

5

of review." He contends that J.G.'s testimony "was false and the allegations made at trial were done after years of coaching by his grandfather[.]" S.D.G. references testimony given at the hearing on the motion for new trial.

Louisiana Revised Statutes 14:42 provides in pertinent part:

> A. Aggravated rape is a rape committed . . . where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
>
> . . . .
>
> (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense.

Louisiana Revised Statutes 14:78.1 provides in part:

> A. Aggravated incest is the engaging in any prohibited act enumerated in Subsection B with a person who is under eighteen years of age and who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew, or niece.
>
> B. The following are prohibited acts under this Section:
> (1) Sexual intercourse. . . .

In *State v. Freeman,* 01-997, pp. 2-3 (La.App. 3 Cir. 12/12/01), 801 So.2d 578, 580, this court set forth the standard for insufficiency claims:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibilities of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See Graffagnino*, 436 So.2d at 563, *citing State v. Richardson*, 425 So.2d 1228 (La.1983). To obtain a conviction, the elements of the crime must be proven beyond a reasonable doubt.

6

After a review of the record, we find that there is sufficient evidence to support the defendant's convictions of aggravated rape and aggravated incest. At trial, J.G. testified that S.D.G. sexually abused him. Further, the record contains testimony from several witnesses who stated that J.G. revealed that S.D.G. put his penis in his anus. C.G., J.G.'s father, testified that he first became aware of the abuse when he, J.G., and C.G.'s grandmother were on D.G's father's porch. C.G. testified that J.G. stated that his brothers "had pumped him and they was [sic] going to take his guts out." When asked if J.G. identified any particular brother, C.G. responded: "[H]e said [S.D.G.]."

D.G.'s father testified that he first realized that J.G. was having problems when J.G. spent one weekend with him. He recalled that J.G. had a nightmare: "[P]robably 3:00 o'clock in the morning, he starts screaming, kicking and carrying on. Okay, so I pick him up, I reach down and pick him up and pull him to me like this and he's trying to -- he's trying to fight me, trying to break away from me, you know." D.G.'s father testified that he had never witnessed a child's nightmare like this before. As such, he opined that "somebody has done something to [the] baby." D.G.'s father testified that when he questioned J.G. about what happened to him, J.G. revealed that S.D.G. "stuck his wee-wee in his butt."

J.G.'s preschool teacher, Calline Crawford, testified that she observed J.G. engaging in inappropriate behaviors. She described an incident where J.G. "had the baby [doll] over there and he had the clothes stripped off and he took the little plunger out of the little shot thing from the doctor's kit and he was poking it into the orifices of the doll." According to Ms. Crawford, she told J.G. that they did not do that sort of thing at school, to which he responded, "my dad's brothers do it to me" and that "they had popped him in his behind." Ms. Crawford also mentioned that J.G.

7

was unusually rough toward boys when playing, although he was never aggressive toward girls.

Approximately three years after the abuse, J.G. spoke with Connie Ziegler, a forensic interviewer with the Rapides Children's Advocacy Center. A videotape, cassette tape, and transcript of the interview were entered into evidence. J.G. told Ms. Ziegler that when D.G. was in the hospital delivering his baby sister, he stayed with S.D.G. at S.D.G.'s parents' home. He stated that he and S.D.G. were alone in S.D.G.'s room; S.D.G. was on the floor and he was sitting in his lap. When Ms. Ziegler suggested that S.D.G. was lying on the floor and J.G. was lying in his lap, J.G. agreed with this statement. In response to whether anyone has ever touched him on his private parts, J.G. initially named S.D.G. and J., but after further questioning, he indicated that S.D.G. had touched him on his butt with his "wee-wee." J.G. explained that S.D.G. "put it in my butte [sic]." He further explained that it felt rough and that there was blood on the floor.

We note, as the trial court did, that some of the details surrounding J.G.'s sexual abuse varied from time to time. In its reasons for ruling, the trial court stated:

> This case, as in most cases dealing with the rape of a young child, has contradictions. An analysis of the evidence and the contradictions found therein is necessary to understanding the findings of this Court in this case. At the time of the alleged incident, the child victim was 4 years of age. At the time of trial, he was 8 years old and in the third grade at school. His statements regarding the sexual abuse spanned over almost 4 years. The Court makes these observations because the age of the child victim, because of the nature of the alleged incident, and the time that has passed since these alleged occurrences happened are significant in my opinion, in considering the contradictions that are found in the testimony presented at trial.
>
> The Court first considers the evidence presented by the victim. At the outset, the Court was mindful that young children such as this victim, can be suggestible and tend to be compliant and follow the lead of the questioner. In the opinion of the Court, the direct examination did

8

tend to be suggestible at times, but as to the essential and critical facts surrounding what happened, the victim's testimony was unprompted in stating [S.D.G.] stuck his wee-wee in my butt. The victim further testified that it occurred in [S.D.G.]'s room while sitting on the floor in [S.D.G.]'s lap. Initially the victim testified that this was the only time that it happened. Later in his testimony, the victim was asked again by the State if this happened this one time or did it happen again. To this question, the victim then said it happened again. He testified that it happened a total of three times in [S.D.G.]'s room. The victim stated that at the time this happened, his family was living next door to his grandparents[.] His mother was in the hospital having his baby sister. He testified that he stayed with his daddy's brothers while [his grandparents] were at the hospital with his mother. On cross examination, several contradictions were brought out. First, the victim was confronted with stating in his Advocacy Center interview that [S.D.G.] had raped him 10 times. The victim said that he only said 3 times and then at the suggestion of defense counsel, he said well he forgot that. Secondly, the victim was questioned about stating in the Advocacy interview that [S.D.G.] and he were lying on the floor. And thirdly, he was asked about [S.D.G.] putting his clothes in the clothes dryer when they were removed. In his testimony at trial, the victim stated that [S.D.G.] just pulled them down. Again, at the suggestion of defense counsel, he said that he must have forgotten.

The first discrepancy is the number of times the victim was raped. It is the opinion of the Court that the number of times that the victim says that he was raped is not significant because of his age. A child of 4 or 5 is not detailed [sic] oriented in the opinion of this Court. Additionally, the Court doubts whether the victim could count to 10 at the time that the alleged events -- incidences occurred or at the time of his forensic interview. Remember that at that time of the interview, he was only 5 years old. The contradiction as to the position of the victim and defendant is a more important issue in the mind of the Court. As noted earlier, the victim testified extensively on direct and cross regarding [S.D.G.] and his position on the floor. He testified that [S.D.G.] was sitting on the floor and that he was sitting in [S.D.G.]'s lap. However, in the Advocacy Center transcript, he responds to questions on this issue by saying that [S.D.G.] was lying on the floor and he was lying on [S.D.G.]. A review of the video tape, along with a transcript of the interview, was revealing to the Court on this issue . . . [T]he victim had not said that [S.D.G.] was laying on the floor, it was only when the interviewer asked the question "[S.D.G.] was laying on the floor", [sic] does the victim respond in the affirmative. Then the interviewer suggests by her question that the victim was lying in [S.D.G.]'s lap. He never repeats these facts in the interview . . . [T]he contradiction found in these facts arises from the suggestive nature of this line of questioning by the forensic interviewer. The victim did not offer the fact that they were lying on the floor in each other -- and on each other

until suggested by the interviewer. The Court believes that the victim was merely being compliant in responding in the affirmative.

Lastly, the contradiction as to whether the victim's clothes were pulled down or taken off and placed in the clothes dryer is not a significant fact in this case, in the opinion of this Court. As stated earlier, the child's age and the nature of the crime could explain this discrepancy.

. . . .

. . . Judging the credibility of a young child such as the victim in this case is tied closely to the issue of competency. Understanding, not age, is the test our courts have applied in determining competency of any witness . . . The Court was of the opinion that the child understood the questions posed to him. The Court would note that it did observe the child on several occasions, with expressions of fear during his testimony. Considering all of the factors, it is the opinion of this Court that the victim gave competent testimony in this matter. This Court, in determining the credibility of the victim, also applied the standard that his allegations of sexual abuse be consistent. The Court looked for consistency over time, across people and across methods of communications. Consistency over time means that the victim tells the same story on several different occasions. In applying this test, the Court found that the victim told the story that [S.D.G.] had stuck his wee-wee in his butt to his grandfather [], to Connie Ziegler, the Rapides Children's Advocacy Center interviewer, and to this Court. The time span of these various statements are over a 4 year period. The contradictions in these various statements do not pertain to the core facts that he was anally raped by [S.D.G.]. Consistency across people refers to telling the same story to more than one person. Again, the victim has done that as reflected by the people listed above. And again, he has told the same core facts to these people. Consistency across methods of communications refers to corroborating data from the child's play and from his non-verbal communications. There was testimony from the victim's grandfather, his teacher and Dr. O'Boyle regarding such communications.

. . . .

Therefore, the Court based upon the evidence presented in this matter finds that the State has proven beyond a reasonable doubt that [S.D.G.] did commit the offense of aggravated rape of a child under the age of 13. The evidence that convicts the defendant of the offense of aggravated rape of a child under the age of 13 is the same evidence in the opinion of this Court, that convicts [S.D.G.] of the offense of aggravated incest.

In *State v. Schexnaider*, 03-144, p. 9 (La.App. 3 Cir. 6/4/03), 852 So.2d 450, 457 (quoting *State v. Williams*, 00-981, p. 7 (La.App. 5 Cir. 4/11/01), 786 So.2d 805, 810, *writ denied*, 01-1377 (La. 3/28/02), 812 So.2d 646), this court stated that "[t]he testimony of the victim alone can be sufficient to establish the elements of a sexual offense, even where the State does not introduce medical, scientific or physical evidence to prove the commission of the offense." Additionally, "[t]he credibility of a witness, including the victim, is within the discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness." *Id.*

Insofar as J.G.'s accounts of the event differed on occasion, the trial court's ruling reveals that it extensively grappled with the credibility issue and ultimately concluded that the inconsistencies did not relate to the "core facts" of the charge that S.D.G. anally raped him. Instead, the trial court found that J.G.'s reporting of the core facts and central allegation remained the same. The record supports this determination and reveals no abuse of the trial court's discretion in this regard. Furthermore, several witnesses, including Dr. O'Boyle, corroborated this reporting and that portion of J.G.'s trial testimony implicating S.D.G. Further, the findings from the physical examination performed on J.G. supported his allegation of anal rape. Having examined this evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found S.D.G. guilty of aggravated rape and aggravated incest beyond a reasonable doubt.

Our determination as to the sufficiency of the evidence remains the same despite inconsistencies later revealed during the hearing on the motion for new trial. During the hearing, C.G. testified that his trial testimony was not truthful in that J.G. did not tell him that S.D.G. sexually abused him. According to C.G., J.G. stated that

11

he did not know who did this to him. C.G. alleged that D.G's father pressured both him and J.G. to say that S.D.G. was the perpetrator and threatened to do him bodily harm if C.G. told anyone otherwise and the case was overturned. We further note that J.G. took the stand and stated that S.D.G. "didn't do nothing."

The trial court's ruling on the motion for new trial reveals that it considered this post-trial testimony and that it considered the weight to be afforded the witnesses at that stage of the proceedings. It specifically rejected the testimony of C.G., noting that it "was not material in the decision of the Court following the trial in which the Court determined that the evidence demonstrated beyond a reasonable doubt that [S.D.G.] was guilty." As for J.G., the trial court stated that "[o]bserving his demeanor, both the way that he answered the questions and the way that he looked and responded, convinces the Court that he is now or was today in terms of his testimony, confused." This type of acceptance and/or rejection, in whole or in part, of a witness's testimony is within the province of the trier of fact. *See Schexnaider,* 852 So.2d 450. Again, we find no abuse of discretion in the trial court's resolution of these credibility issues.

Accordingly, this assignment has no merit.

*Excessive Sentence - Aggravated Rape*

S.D.G. argues that his "sentences amount to the needless imposition of pain and suffering and should be considered constitutionally excessive." S.D.G. contends that the trial court "merely imposed a life sentence because it was statutorily mandated" without ordering a pre-sentencing investigation report or considering mitigating

12

factors. Furthermore, he argues that the "Trial Court erred in failing to rule on Defendant's Motion to [R]econsider Sentence."[5]

Louisiana Revised Statutes 14:42(D) provides in pertinent part:

> (1) Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
>
> (2) However, if the victim was under the age of twelve years, as provided by Paragraph (A)(4) of this Section:
>
> . . . .
>
> (b) And if the district attorney does not seek a capital verdict, the offender shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The provisions of C.Cr.P. Art. 782 relative to cases in which punishment is necessarily confinement at hard labor shall apply.

In *State v. Day*, 05-287, pp. 4-5 (La.App. 3 Cir. 11/2/05), 915 So.2d 950, 953-54, a panel of this court recently explained that:

> This court has set forth the following standard to be used in reviewing excessive sentence claims:
>
> > La. Const. art. I, § 20 guarantees that, "[n]o law shall subject any person to cruel or unusual punishment." To constitute an excessive sentence, the reviewing court must find the penalty so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and is, therefore, nothing more than a needless imposition of pain and suffering. *State v. Campbell*, 404 So.2d 1205 (La.1981). The trial court has wide discretion in the imposition of sentence within the statutory limits and such sentence shall not be set aside as excessive absent a manifest abuse of discretion. *State v. Etienne*, 99-192 (La.App. 3 Cir. 10/13/99); 746 So.2d 124, *writ denied*, 00-0165 (La.6/30/00); 765 So.2d 1067. The relevant question is whether the trial court abused its broad

---

[5] A review of the record indicates that no motion to reconsider sentence had been filed in S.D.G.'s aggravated rape case or his aggravated incest case. Therefore, S.D.G.'s sentence claims are limited to the review of bare excessiveness in accordance with La.Code Crim.P. art. 881.1. *State v. Mims*, 619 So.2d 1059 (La.1993).

13

> sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La.5/31/96); 674 So.2d 957, *cert. denied*, 519 U.S. 1043, 117 S.Ct. 615, 136 L.Ed.2d 539 (1996).

*State v. Barling*, 00-1241, p. 12 (La.App. 3 Cir. 1/31/01), 779 So.2d 1035, 1042-43, *writ denied*, 01-838 (La.2/1/02), 808 So.2d 331.

In order to decide whether a sentence shocks the sense of justice or makes no meaningful contribution to acceptable penal goals, this court has stated:

> [An] appellate court may consider several factors including the nature of the offense, the circumstances of the offender, the legislative purpose behind the punishment and a comparison of the sentences imposed for similar crimes. *State v. Smith*, 99-0606 (La.7/6/00), 766 So.2d 501. While a comparison of sentences imposed for similar crimes may provide some insight, "it is well settled that sentences must be individualized to the particular offender and to the particular offense committed." *State v. Batiste*, 594 So.2d 1 (La.App. 1 Cir.1991). Additionally, it is within the purview of the trial court to particularize the sentence because the trial judge "remains in the best position to assess the aggravating and mitigating circumstances presented by each case." *State v. Cook*, 95-2784 (La.5/31/96), 674 So.2d 957, 958.

*State v. Smith*, 02-719, p. 4 (La.App. 3 Cir. 2/12/03), 846 So.2d 786, 789, *writ denied*, 03-562 (La.5/30/03), 845 So.2d 1061.

Because the district attorney did not seek a capital verdict, the defendant was sentenced to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence. In *State v. Price*, 40,408, p. 23 (La.App. 2 Cir. 12/16/05), 917 So.2d 1201, 1214 (citations omitted), the court stated that "[t]he decision to assess mandatory life sentences for certain felonies is within the prerogative of the legislature. The assertion that the mandatory life sentence for aggravated rape is a violation of the prohibition against excessive punishment in the Louisiana Constitution has been repeatedly rejected." Accordingly, we find that trial court did

not abuse its discretion in sentencing S.D.G. to a mandatory life sentence for aggravated rape pursuant to La.R.S. 14:42(D)(2)(b).

*Excessive Sentence - Aggravated Incest*

S.D.G. also contends that his sentence for aggravated incest is constitutionally excessive.

Louisiana Revised Statutes 14:78.1(D) provides:

> A person convicted of aggravated incest shall be fined an amount not to exceed fifty thousand dollars, or imprisoned, with or without hard labor, for a term not less than five years nor more than twenty years, or both.

For his aggravated incest conviction, S.D.G. received the maximum sentence of twenty years. "[M]aximum sentences are typically reserved for the worst offenders." *G.M.W., Jr.*, 916 So.2d at 464. Here, J.G. was in S.D.G.'s temporary care at the time of the offense. The aggravated incest was perpetrated on a three-year old child with such violence and force to cause lasting and maybe even permanent physical injury to J.G. in addition to any psychological damage caused by the crime. Due to the nature of the offense, the tender age of the victim, the harm done, and the fact that S.D.G. will not have to serve this sentence independently of his aggravated rape sentence as his sentences were ordered to run concurrently, we find that the trial court did not abuse its discretion in sentencing S.D.G. to twenty years at hard labor.

This assignment lacks merit.

**DECREE**

For the foregoing reasons, the defendant's convictions and sentences are affirmed. The defendant's sentences are amended to reflect that diminution eligibility is denied pursuant to La.R.S. 15:337. The trial court is instructed to make a notation in the minutes reflecting the amendment. This matter is remanded to the trial court

15

for its compliance with the provisions of La.R.S. 14:78(E) and amendment to the sentence for aggravated incest, if required.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED AS AMENDED. REMANDED WITH INSTRUCTIONS.**