STATE OF LOUISIANA
v.
DAMON P. FONTENOT
No. KA 06-1280.
Court of Appeal of Louisiana, Third Circuit.
March 14, 2007.
NOT DESIGNATED FOR PUBLICATION
MICHAEL HARSON, District Attorney Counsel for Plaintiff/Appellee: State of Louisiana.
TED L. AYO, Attorney at Law, Counsel for Plaintiff/Appellee: State of Louisiana.
EDWARD KELLY BAUMAN, La Appellate Project, Counsel for Defendant/Appellant: Damon P. Fontenot.
Court composed of SAUNDERS, GREMILLION, and PAINTER, Judges.
SAUNDERS, Judge.
On March 22, 2003, the Defendant, Damon P. Fontenot, was charged by bill of information with indecent behavior with juveniles, a violation of La.R.S. 14:81. A plea of not guilty was entered on April 23, 2003. The matter was tried before a jury on December 13 and 14, 2005, and the Defendant was found guilty as charged. On May 1, 2006, he was sentenced to serve three years at hard labor, suspended, and was placed on five years of active supervised probation. In addition to the regular conditions of probation, the Defendant was ordered to have no unsupervised contact with any minors other than his own children. The Defendant filed a Motion to Reconsider Sentence on May 30, 2006, which was denied without a hearing on June 1, 2006. The Defendant is now before this court, alleging that the bill of information is defective and that the evidence presented was insufficient to find him guilty of indecent behavior with juveniles.

FACTS:
During the morning hours of October 7, 2002, the Defendant, a bug exterminator, entered the victim's home to spray for bugs. While in the home, the Defendant allegedly exposed his genitals to the fourteen-year-old victim.

ERRORS PATENT:
In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find there is one error patent.
The trial court failed to deny the Defendant eligibility for diminution of sentence. Louisiana Revised Statutes 15:537(A) requires diminution of sentence be denied to a person who is convicted of or pleads guilty to "any provision of Subpart C of Part II, or Subpart A(1) of Part V, of Chapter 1 of Title 14 of the Louisiana Revised Statutes of 1950," which includes indecent behavior with juveniles, a violation of La.R.S. 14:81.
Recently, this court addressed this issue in State v. S.D.G., 06-174, pp. 4-5 (La.App. 3 Cir. 5/31/06), 931 So.2d 1244, 1247:
Louisiana Revised Statutes 15:537(A) requires that diminution of sentence be denied to all offenders who are convicted of or plead guilty to sex offenses, including aggravated rape and aggravated incest. Here, the trial court failed to deny the defendant diminution eligibility under La.R.S. 15:537(A) for both sentences imposed. In State v. G.M.W., Jr., 05-392, p. 2 (La.App. 3 Cir. 11/2/05), 916 So.2d 460, 461, the court stated:
We note that the second paragraph of La.R.S. 15:537 is clearly directed to the sentencing court, and the trial court's failure to include a denial of diminution of sentence thereunder renders Defendant's sentences illegally lenient. Pursuant to State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790 and La.Code Crim.P. art. 882, this court is authorized to recognize and correct illegally lenient sentences.
Here, the trial court's failure to deny diminution of sentence renders the defendant's sentences illegally lenient. Therefore, we amend the defendant's sentences to reflect that diminution eligibility is denied pursuant to La.R.S. 15:537(A). We also instruct the trial court to make a notation in the minutes reflecting the amendment.
Likewise, in the present case, we amend the Defendant's sentence to reflect that he is not eligible for diminution of sentence pursuant to La.R.S. 15:537. As in S.D.G., the trial court is instructed to note the amendment in the court minutes. See also State v. Fontenot, 06-226 (La.App. 3 Cir. 7/12/06), 934 So.2d 935 (same conclusion, but due to the fact the case was remanded for the correction of other errors, the trial court was instructed to deny eligibility for diminution of sentence).

ASSIGNMENT OF ERROR NO. 1:
In this assignment of error, the Defendant argues that the bill of information charging him with indecent behavior is defective. The Defendant asserts that the bill of information incorrectly states that he committed a lewd or lascivious act upon a juvenile whereas the conviction was based on a lewd and lascivious act in the presence of a juvenile. Therefore, the Defendant contends that the offense charged in the indictment was not committed and that the trial court should have ordered that the indictment be quashed on its own motion. In the alternative, the Defendant argues that trial counsel should be considered ineffective because he failed to file a motion to quash and an application for a bill of particulars.
The bill of information, in the instant case, states that the Defendant ". . . did willfully, unlawfully and intentionally commit lewd or lascivious acts upon a juvenile. . ." a violation of La.R.S. 14:81. Louisiana Revised Statutes 14:81 is entitled "Indecent behavior with juveniles" and reads, in pertinent part:
A. Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person . . .
(emphasis added.) Thus, the statute indicates that the crime of indecent behavior with juveniles may be committed in two ways. The jury found the Defendant guilty of indecent behavior with juveniles, in general, but did not specify the manner in which the Defendant committed the crime.
In support of his argument that the bill is defective, the Defendant refers this court to the supreme court's decision in State v. Edwards, 283 So.2d 231 (La.1973). In Edwards, the bill of information stated that the defendant did ". . . violate the laws of Louisiana by indecent behaviour [sic] with a Juvenile contrary to the form of the Statute of the State of Louisiana." Id. at 232. The court noted that the offense proscribed in La.R.S. 14:81 may be committed in two ways, as noted above, and that the crime of indecent behavior with juveniles cannot be charged in the short form because it is not listed in La.Code Crim.P. art. 465, which allows for the same. Because the bill of information did not inform the defendant in which way he was charged with having committed the offense, the court concluded that ". . . [t]he bill fails to comply with the mandate prescribed by Section 10 of Article 1 of the Louisiana Constitution that `the accused shall be informed of the nature and cause of the accusation against him.'" Id. at 233. (citation omitted.)
The instant case can be distinguished from Edwards in that the Defendant's bill does not omit the manner in which the crime was allegedly committed. Although the Defendant may have a valid argument that the evidence at trial was insufficient to prove that the Defendant committed the crime in the manner stated in the bill, we find that the bill, on its face, is not defective.[1] Further, trial counsel for the Defendant was not ineffective for failing to file a motion to quash a bill that was not defective on its face. Accordingly, we find that this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2:
In this assignment of error, the Defendant argues that there was insufficient evidence for the jury to find him guilty beyond a reasonable doubt. Specifically, the Defendant contends that his conviction rested solely upon the testimony of the victim, a fourteen-year-old girl. Although the Defendant concedes that the testimony of one witness can be sufficient to sustain a conviction, he complains that the grand jury heard the same testimony four months after the alleged incident and did not return a true bill against him.
The analysis for a claim of insufficient evidence is well-settled:
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
State v. Kennerson, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.
The elements of the crime at issue are set forth in La.R.S. 14:81(A), which states, in pertinent part:
Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen, where there is an age difference of greater than two years between the two persons, with the intention of arousing or gratifying the sexual desires of either person.
The victim testified at trial that she was home alone when she heard a knock on the door between 9:30 a.m. and 11:00 a.m. She went to the door and saw the Defendant walking away from the door. The victim had seen the Defendant once before when he previously visited her house to spray for bugs, but she had never spoken to him, and she did not know him by name.
When she opened the door, the Defendant turned around and told the victim that he had sprayed the outside of the home for bugs and that he was leaving a note on the door to let her mother know of the same. She responded, "Okay," and then closed the door. The Defendant returned to the door, knocked, and the victim opened the door once more. According to the victim, the Defendant stated that he would spray the inside since she was home, and she permitted him to enter the home. Next, the Defendant asked if he could use the phone, and she allowed him to make a phone call. After the call, the Defendant asked to use the restroom. After using the restroom, the Defendant began spraying the house.
Meanwhile, the victim was watching television in the living room. After the Defendant finished spraying, he inquired about the victim's age. When she responded, he acted surprised that she was fourteen years old because he thought he had seen her at a strip club before. He then asked her to put on some music so he could strip. When the victim responded, "No," he asked her if she would like to strip for him because she was pretty. Once more, she responded, "No." The victim testified that the Defendant then unfastened his pants, pulled them down, and pulled out his penis from the front of his red briefs. The victim held a pillow in front of her face to avoid seeing the Defendant and told him to stop and to please get out. The victim stated that the Defendant came around to her side, and although she had the pillow in front of her face, she could see him out of the corner of her eye. She continued to tell him to stop and get out. The victim was certain that she was seeing the Defendant's penis and nothing else. The Defendant finally complied and pulled up his pants. Before leaving, he told her not to tell her mom and that he was sorry.
After the Defendant left, the victim called her mother and stepfather at work and told them what happened. Her parents came home and called the police.
The victim's mother, testified that prior to the incident, she had received a letter from J&J Exterminating, stating that they would no longer be spraying the inside of her home unless she specifically called with a problem; only the outside perimeter of the house would be sprayed. After receiving the correspondence, the Defendant would spray the outside and leave a note on the door indicating that he had sprayed. Prior to the day of the incident, the victim's mother called on one or two occasions with a problem inside the house.
On the day of the incident, the mother of the victim testified that she received a call at work from her daughter, who was hysterical at the time. She stated that she was confused about what her daughter was saying, so she handed the phone to her husband, who spoke with the victim and ascertained what had happened. They immediately called the sheriff's department before leaving the office and then drove home. It took approximately thirty minutes for them to arrive home.
After testifying before the grand jury in February of 2003, the victim and her mother were informed that the jury did not return a true bill. Rather than dropping the charge at that juncture, the victim decided to push the matter forward.
Sergeant Dale Hargrave of the Vermilion Parish Sheriff's Office testified that he investigated the complaint involving this incident. When he arrived on the scene, he interviewed the victim. He testified that the victim was upset and cried somewhat during the interview. He also testified that the victim's parents were belligerent and more hysterical than the victim.
After leaving the scene, he interviewed the Defendant. Sergeant Hargrave testified that he did not check the color of the Defendant's underwear because the Defendant stated that he was not wearing any underwear. Sergeant Hargrave later stated that he respected the Defendant's privacy and that he did not want to see the Defendant's penis. Sergeant Hargrave then completed his report and forwarded it to the district attorney's office. The Defendant was not arrested at that time because Sergeant Hargrave was advised not to do so by the chief of investigations. Sergeant Hargrave explained that an arrest is not usually made unless the person is caught in the act of committing a crime or there is physical evidence of a crime.
Yvette Beatrice Fontenot, the Defendant's wife of thirteen and one-half years, testified that the Defendant did not own red underwear of any kind in October of 2002. Also, Mrs. Fontenot stated that she had been unable to run the washer and dryer due to electrical problems related to Hurricane Lilly, and as a result of same, they were running out of clean clothes to wear. On the morning of the incident, Mrs. Fontenot testified that she left the home before the Defendant, but she knew they had dirty laundry and would assume that the Defendant had run out of clean underwear, as he had only a few pair. She admitted, however, that he was not accustomed to going without underwear. Further, when asked if the Defendant might have purchased red underwear without her knowledge, Mrs. Fontenot replied that she handles all the finances and that she gives him only enough money to buy lunch, drinks, and snacks when he is on the road. Additionally, Mrs. Fontenot testified that the Defendant wears only white briefs.
The Defendant was the last witness called to testify at trial. He testified that on the day of the incident, he had finished spraying the outside of the house when he put the receipt on the door, and he heard the television on inside. He knocked on the door and asked the victim if he could service the inside of the house since she was home. His beeper then went off, and the Defendant asked the victim if he could use the phone. After placing a phone call to his wife, the Defendant serviced the house.
The Defendant denied making any sexual advances toward the victim while he was in the home. He stated that he had no idea why she would say that he made advances toward her. Further, he testified that he usually wears underwear, but he was not wearing underwear that day. Additionally, he stated that he had no colored underwear, only white.
We find that the Defendant is correct in stating that the testimony of one witness can be sufficient to sustain a conviction. However, the Defendant's complaint that a true bill was not returned against him by the grand jury does not prove that the evidence presented at trial was not sufficient to convict him. Although there are only two eyewitnesses in this case, the victim and the Defendant, the testimony of the victim's mother, as well as that of Sergeant Hargrave, supports the victim's allegation that the Defendant exposed himself. In addition to the victim's account of the facts, these witnesses testified that the victim was hysterical when she telephoned her parents following the incident and cried as she explained the event that had taken place to authorities. Further, while the Defendant attempted to dispute the victim's claim that he was wearing red briefs, we note that the jury chose to believe the victim's version of the facts, rather than the Defendant's claim that he was not wearing any underwear at all.
Lastly, although the Defendant has not alleged that the evidence at trial was insufficient to prove that he committed the crime in the manner stated in the bill of information, the issue was made in assignment of error number one and thus, is addressed herein. First, the jury was instructed as to the charge of indecent behavior with juveniles as follows:
Indecent behavior with juveniles is the commission of any lewd or lascivious act upon the person or in the presence of any child under the age of seventeen (17), where there is an age difference of greater than two (2) years between the two (2) persons, with the intention of arousing or gratifying the sexual desires of either person.
The jury's verdict sheet read as follows:

VERDICT
Charge: Indecent Behavior with Juveniles

RESPONSIVE VERDICTS
1) Guilty of Indecent Behavior with Juveniles.
2) Guilty of Attempted Indecent Behavior with Juveniles.
3) Not guilty.
On page two of the verdict form, the foreperson indicated, "We, the jury, find the defendant guilty of indecent behavior with juveniles." Thus, the jury's verdict does not specify in which manner the crime was committed  whether a lewd or lascivious act had been committed upon the child or in the presence of the child. However, the facts presented at trial indicate that the Defendant committed the crime in the presence of the victim, not upon the victim.
The State maintains in its brief to this court that it would be a stretch for defense counsel to speculate as to what meaning the jury attached to the word "with." Further, the State asserts that the testimony clearly supports the jury's finding that the act of waving his penis a few inches from the victim's face is an act upon that person. We note, however, that the record does not indicate how far away the Defendant's penis was from the victim's face, and thus, the State's argument is weak, at best.
This issue was addressed by the fourth circuit in State v. Williams, 02-260 (La.App. 4 Cir. 3/12/03), 842 So.2d 1143, writ denied, 03-1991 (La. 1/16/04), 864 So.2d 625. In Williams, the court held that the defendant was not entitled to a reversal of his second degree kidnapping conviction, even though the bill of information listed the wrong subsection of the kidnapping statute under which he was tried. The defendant argued that the evidence was insufficient to support a conviction for second degree kidnapping under the subsection as stated in the bill of information. The trial court summarized the pertinent jurisprudence as follows:
In two cases courts have held that a defendant's conviction for first degree murder need not be reversed where the evidence was insufficient to support a conviction under one subsection of La. R.S. 14:30 but the evidence was sufficient to convict the defendant under another subsection of that statute. See State v. Wright, XXXX-XXXX (La.12/4/02), 834 So.2d 974, State v. Ruffin, 572 So.2d 232 (La.App. 1 Cir.1990). However, it is unclear from either of these cases whether the State alleged both subsections in the indictment, used the short form indictment which did not specify with which subsection the defendant was being charged, or as here alleged only one subsection for which the State did not present sufficient evidence.
A somewhat similar situation arose in State v. Schrader, 518 So.2d 1024 (La.1988). The defendant was charged with "first degree" murder, but because the crime occurred under a former statute which did not differentiate between "first" and "second" degree murder, the State later amended the indictment to charge him only with "murder." At the time of the offense, "murder" was committed either (1) as a homicide with specific intent, or (2) as a homicide occurring during the perpetration of an enumerated felony. The State's answers to the defendant's bill of particulars alleged that the defendant committed the murder while engaged in the perpetration of aggravated arson, but it also alleged it was proceeding under subsection (1), the specific intent subsection. On the day of trial, the State apparently spotted the discrepancy and moved to amend its answers to reflect that it was proceeding under subsection (2) to "clarify" the record. Defense counsel objected, stating he had been expecting the State to have to prove intent to kill. The trial court allowed the amendment; the case proceeded to trial; and the defendant was convicted of manslaughter. On appeal, he alleged the trial court erred by allowing the State to amend the bill of particulars on the day of trial. The Court rejected this argument, stating:
The defense was clearly entitled to know under which subsection of R.S. 14:30 the state was proceeding. State v. Huizar, 414 So.2d 741 (La.1982); State v. Rogers, 375 So.2d 1304 (La.1979); State v. Johnson, 365 So.2d 1267 (La.1978). Nevertheless, as set forth in State v. Unzueta, 337 So.2d 1102, 1103-04 (La.1976), "[w]hile the bill of particulars is intended to assure the defendant a full understanding of the charge in order that he might, in fairness, properly defend himself, it was never intended as a trap for the unwary district attorney. It is for this reason that Article 485 of the Code of Criminal Procedure permits the district attorney to cure a defect in a bill of particulars." The First Circuit relied on Unzueta in denying defendant relief on this point. See, Schrader, 506 So.2d at 871. Of course, Art. 485 addresses only those defects which might give rise to a motion to quash, not erroneous answers which may mislead counsel and impair preparation of the defense. In this case, however, the state had clearly informed counsel of how it intended to prove its case. The question of intent was a matter of inference arising from the circumstances of the case, if the state chose to make the argument at trial. R.S. 15:445. The apparent discrepancy in the state's answers should have alerted counsel that the prosecution had simply referred to the wrong subsection of the statute. In any event, the defense efforts to subpoena its own arson expert for trial show clearly that counsel knew exactly where the issues would be joined at trial and that the state's answers as a whole fairly informed the defendant of the nature of the charge against him.

Schrader, at pp. 1029-1030.
Id. at 1147-48.
In making its decision, the Williams court noted that the State's answer to the bill of particulars did not specify what subsection of the statute under which it was proceeding and that the answer referred to an attached incident report, which was not included in the record to indicate how much information was contained in the report. However, the court observed that defense counsel was present at a suppression hearing held five months prior to trial where the victim's account of the facts was heard. Also, the court considered that defense counsel had prepared his case based upon the assumption that the defendant had been charged under the correct subsection, not as alleged in the bill of information. The court concluded, ". . . this is not a case where counsel had been misled as to what evidence the State was planning to present and was unprepared to meet the allegation in the bill of information." Id. at 1148.
In the instant case, the Defendant was provided with open file discovery. Thus, he was not misled as to what evidence the State had against him. Further, the record clearly supports the contention that defense counsel prepared the Defendant's case upon the assumption that the bill of information charged him with committing a lewd or lascivious act in the presence of a juvenile. Accordingly, we find that, considering the holding in Williams and its progeny, the evidence adduced at trial was sufficient to prove that the Defendant was guilty of indecent behavior with juveniles.

CONCLUSION:
The Defendant's conviction and sentence are affirmed. However, we amend the Defendant's sentence to reflect that he is not eligible for diminution of sentence pursuant to La.R.S. 15:537. The trial court is instructed to note the amendment in the court minutes.
AFFIRMED, AMENDED, AND RENDERED.
NOTES
[1] The sufficiency of the evidence in relation to the crime as charged in the bill is discussed in assignment of error number 2.